## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

MARSHALL G. HILES,
    Plaintiff,

vs.

ARMY REVIEW BOARD
AGENCY, et al.,
    Defendants.

Case No. 1:12-cv-673
Weber, J.
Litkovitz, M.J.

**ORDER AND REPORT AND
RECOMMENDATION**

Plaintiff Marshall G. Hiles, proceeding pro se, brings this action individually and

purportedly on behalf of the estate and heirs of his father, Charles D. Hiles, deceased (hereafter

"Hiles"), against a number of federal agencies and departments. Plaintiff names as defendants

the Army Review Board Agency (ARBA), the Veterans Administration (VA), the United States

Army (Army), the Department of Defense (DOD), and the Department of Veterans Affairs

(DVA). Plaintiff has filed a 405-page complaint that sets forth six claims for relief and

supporting allegations, exhibits, and arguments. (Doc. 6). The matter is before the Court on

defendants' motion to dismiss the complaint pursuant to Fed. R. Civ. P. 12(b)(1) for lack of

jurisdiction over the subject matter of the complaint (Doc. 15)[1], plaintiff's memorandum in

opposition to defendants' motion to dismiss (Doc. 25), and defendants' reply in support of their

motion to dismiss (Doc. 31). This matter is also before the Court on plaintiff's "Motion to

Admit and Extend" (Doc. 21) and "Motion to Stay and Extend" (Doc. 22), defendants'

---

[1] Defendants filed an amended version of the motion to dismiss to correct a typographical error. (Doc. 16).

memorandum in response to plaintiff's motions (Doc. 26), and plaintiff's reply memorandum in

support of the motions (Doc. 27); plaintiff's "Motion for Oral Argument, Request for Hearing,

Personal Appeal" (Doc. 32), defendants' memorandum in opposition to plaintiff's motion (Doc.

34), and plaintiff's reply memorandum in support of the motion (Doc. 35); and plaintiff's

"Motion to Admit Legal Evidence and Addendum that Supports All Claims" (Doc. 33) and

defendants' memorandum in opposition to plaintiff's motion (Doc. 37).

## I. Background

This lawsuit arises out of injuries Hiles sustained in World War II during the 1944 Battle

of Peleliu and ongoing efforts by Hiles and plaintiff to obtain what they believed to be fair

disability ratings and just compensation for those injuries, as well as plaintiff's efforts to correct

military records generated during Hiles's military service to accurately reflect the cause and

extent of Hiles's injuries. (Doc. 6). Those efforts began shortly after Hiles's 1946 honorable

discharge when he made his initial claim for VA benefits in 1948, and plaintiff has continued

those efforts beyond Hiles's death in 2007.

Plaintiff brings his first claim for relief against the ARBA. (Doc. 6 at 424)[2]. In support

of this claim, plaintiff alleges the Army falsely reported in records documenting the results of

Hiles's discharge exam conducted on January 6, 1946, that "everything was normal," including

Hiles's "mental status." (*Id.* at 425, 439). Plaintiff alleges that as a result of the Army's

fraudulent conduct, Hiles never received from the VA the proper health care he required and the

financial benefits to which he was entitled. (*Id.*). Plaintiff requests that the Court order the

---

[2] All page references are to the ECF page identification number.

ARBA to correct Hiles's military records to reflect the full extent of the injuries Hiles suffered at the Battle of Peleliu in 1944.

Plaintiff brings his second claim against the VA. (Doc. 6 at 440). Plaintiff makes the following allegations in support of this claim for relief: At Hiles's request, plaintiff filed a claim and an appeal with the VA in January of 2006 on the ground Hiles had never been properly rated by the VA, nor adequately compensated for, all of his combat related injuries. (*Id.*). The claim was submitted for expedited appeal to a unit known as the "Tiger Team," which rated Hiles as having a 100% service-connected disability, and the claim was then resubmitted to the VA for completion. The VA rated Hiles as having only a 70% service-connected disability. The VA engaged in stalling tactics, which included refusing to accept a Durable Power of Attorney submitted by plaintiff, and Hiles died before his appeal was finished and before payment was made to him based on the proper combat injury ratings. (*Id.* at 441). The VA has informed plaintiff that he has no standing to continue the appeal. (*Id.*). The VA also informed plaintiff that there was no appeal pending before it at the time of Hiles's death, when in fact Hiles had sent three letters to the VA asking the VA to account for his injuries at the proper rates, to pay him at the correct 100% disability rate, and to pay him back compensation for the period dating back to June 1948, when the VA initiated its delay tactics and wrongful claim denials. (*Id.* at 442). Plaintiff contends that had it not been for the VA's delays and diversion tactics, Hiles's claim and appeal would have been settled and payment would have been made to him before his death. (*Id.*). Plaintiff is pursuing a claim for back benefits he alleges are owed to Hiles for the period from 1948, when Hiles made his initial claim for benefits, until 2006 when the Tiger Team upheld Hiles's final claim and appeal, based on a 100% disability rating on the theory that

3

had it not been for the "VA's consistent and repeated acts of misconduct," Hiles's claim and appeal would have been completed before his death. (*Id.*). Plaintiff also seeks to recover Hiles's "remaining burial costs" that should have been paid were it not for the VA's conduct. (*Id.* at 525). Plaintiff further seeks an order from the Court directing the VA to complete the appeal upheld by the Tiger Team prior to Hiles's death and to address all outstanding issues. (*Id.* at 524).

Plaintiff brings his third and fourth claims for relief against the Army and DOD. (Doc. 6 at 526). Plaintiff alleges that the Army and DOD fraudulently created military and medical records from July 1943 to January of 1946 relating to Hiles that concealed the incident on Peleliu and the full extent of Hiles's injuries. (*Id.*). Plaintiff further alleges that the VA relied on these fraudulent medical records thereafter to deny Hiles the correct disability ratings and benefits, beginning with Hiles's initial claim in 1948 which was denied on the basis his injuries were non-combat related. (*Id.* at 526, 532-33). Plaintiff alleges that he filed tort claims against these defendants in March of 2011 concerning actions the Army took to cover up what occurred at Peleliu and the full extent of Hiles's injuries. (*Id.* at 533). Plaintiff alleges these tort claims were consolidated, forwarded to the Chief Counsel of the Army, and further consolidated with two tort claims he had filed on behalf of Hiles and on his own behalf with the "U.S. Department of Affairs." (*Id.* at 526). He asserts the claims were rejected on sovereign immunity grounds. (*Id.*). As relief for the third and fourth claims, plaintiff seeks $3,000,000 to be awarded to Hiles's estate, alleging that were it not for the Army's fraudulent misconduct and tampering with Hiles's medical records, Hiles would have received proper health care, injury ratings, and compensation for all combat related injuries he sustained during World War II. (*Id.* at 560).

4

Plaintiff brings his fifth claim for relief against the VA on behalf of both Hiles and himself. (Doc. 6 at 562). First, plaintiff claims that the VA conspired with the Army and the U.S. War Department to defraud Hiles of his proper health care and benefits ratings that accounted for all his combat related injuries. (*Id*.). Plaintiff alleges the VA engaged in a pattern of fraud to conceal the truth about the incident on Peleliu and Hiles's resulting injuries, which began when Hiles first filed a claim for benefits in June of 1948, continued from 1962-1967 when Hiles repeatedly appealed the VA's reductions in his combat injury rating, and occurred again when the VA delayed Hiles's final appeal in February of 2006. (*Id*. at 562-563). Second, plaintiff brings a tort claim on his own behalf, alleging the VA's fraudulent concealment of documents important to Hiles's appeal since February of 2006 has damaged plaintiff personally and caused him much "grief, unnecessary expenses, and hundreds of hours of time." (*Id*. at 563). Plaintiff contends that a case which should have been completed by January of 2007 has turned into a case of "cruel and unusual punishment." (*Id*. at 564). As relief, plaintiff seeks an award of $2,732,000 to Hiles, his estate, and his family, as determined from the VA's rating tables, to account for Hiles's injuries dating back to 1948, plus lost wages, expenses, and uncovered medical costs Hiles incurred over the years. (*Id*. at 594). Plaintiff, as the executor of Hiles's estate and the holder of a Power of Attorney, seeks an award of $300,000 to compensate him for the time spent handling this case, which was an excessive amount of time due to the VA's refusal to accept the Power of Attorney. (*Id*. at 595).

Finally, plaintiff brings a claim against the DVA for repeated misconduct by the VA[3].

---

[3] Plaintiff states he is also bringing this claim against Eric Shineski, the U.S. Secretary of Veterans Affairs, but Shineski is not named as a defendant to this lawsuit.

(Doc. 6 at 596). Plaintiff asks the Court to issue an order directing the DVA to overhaul the entire VA claims and appeal system and to impose a deadline for doing so. (*Id.* at 597).

## II. "Motion to Admit and Extend" (Doc. 21) and "Motion to Stay and Extend" (Doc. 22).

Plaintiff moves the Court to admit supplemental documentation, order the Army Board for Correction of Military Records (ABCMR) to correct Hiles's military and medical records as requested in the complaint, stay this lawsuit pending compliance by the ABCMR with the requested Court order, and grant plaintiff an extension of time to respond to defendants' motion to dismiss the complaint. Defendants do not oppose plaintiff's request to submit additional documentation. (Doc. 26). Defendants contend that plaintiff's motion to stay the case should be denied as moot because the ARBA has informed plaintiff it will not act on a request he submitted for correction of Hiles's military records because of the pendency of this lawsuit. (*Id.*, citing Doc. 22-1).

Plaintiff's motions are granted in part and denied in part. Plaintiff's request to submit additional documentation attached to his "Motion to Admit and Extend" (Doc. 21) is GRANTED as defendants do not oppose submission of the documentation. Plaintiff's requests for an extension of time to respond to defendants' motion to dismiss (Docs. 21, 22) are DENIED as moot because plaintiff has filed a memorandum in opposition to the motion to dismiss (Doc. 25). Plaintiff's motion for a stay to allow the ABCMR time to comply with a Court order to correct Hiles's military records (Doc. 22) is DENIED as plaintiff has failed to come forward with factual or legal authority to show the Court has the authority to issue an order of this nature or that a stay is warranted for any reason under the circumstances of this case.

6

### III. "Motion for Oral Argument, Request for Hearing, Personal Appeal" (Doc. 32).

Plaintiff moves for oral argument, alleging defendants' motion to dismiss contains legal and factual errors that are best addressed at an oral hearing and that the only way he will obtain a fair hearing is by appearing in person before the Court. Defendants oppose plaintiff's request, asserting the issues presented by the motion to dismiss have been fully briefed and oral argument is not likely to assist the Court in resolving the jurisdictional issues presented by the motion to dismiss.

S. D. Ohio Civ. R. 7.1(b)(2) provides that "if oral argument is deemed to be essential to the fair resolution of the case because of its public importance or the complexity of the factual or legal issues presented, counsel may apply to the Court for argument. . . . The ground(s) for any such request shall be succinctly explained."

The legal and factual issues involved in this case are not complex and they have been fully briefed by the parties. Moreover, plaintiff has had ample opportunity to address any errors and misstatements he believes defendants have made in their filings. Oral argument is not "essential to the fair resolution" of the motion to dismiss, and resolution of the motion does not require further development of the facts alleged in the complaint. Pursuant to S. D. Ohio Civ. R. 7.1(b)(2), plaintiff's request for oral argument is therefore DENIED.

### IV. "Motion to Admit Legal Evidence and Addendum that Supports All Claims" (Doc. 33).

Plaintiff filed a memorandum in opposition to defendants' motion to dismiss on January 17, 2013 (Doc. 25), and defendants filed a reply in support of their motion on February 13, 2013 (Doc. 31). On March 6, 2013, plaintiff filed his motion to submit additional legal authority in opposition to defendants' motion to dismiss. (Doc. 33). The Local Rules allow for the filing of

a motion, a memorandum in opposition, and a reply memorandum. S. D. Ohio Civ. R. 7.2(a).

"No additional memoranda beyond those enumerated will be permitted except upon leave of

court for good cause shown." *Id.* Plaintiff has not shown good cause for filing an additional

memorandum. Defendants' reply memorandum does not raise new issues that plaintiff has not

had an opportunity to address, and the Court has granted plaintiff leave to submit additional

documentation (*see* Doc. 21). For these reasons, plaintiff's motion to submit an additional

memorandum in opposition to defendants' motion to dismiss (Doc. 33) is DENIED.

## V. Motion to Dismiss (Doc. 16).

Defendants initially move to dismiss the complaint for lack of standing. Defendants

question whether plaintiff has standing to pursue this action on behalf of Hiles's estate and heirs

because the complaint does not demonstrate that plaintiff has been appointed as the

representative of Hiles's estate, and they contend that plaintiff cannot represent other estate

beneficiaries and heirs in his capacity as a pro se litigant because to do so would constitute the

unauthorized practice of law. Defendants argue that even assuming plaintiff could establish

standing to proceed and was not attempting to represent others in his capacity as a pro se litigant,

his claims must fail for lack of subject matter jurisdiction. Defendants assert they have not

waived their sovereign immunity from suit for the claims plaintiff bring; the Court does not have

jurisdiction over plaintiff's claims for veterans' benefits; and plaintiff's claims are barred by the

governing statute of limitations.

### A. The complaint should not be dismissed for lack of standing.

Defendants rely on Ohio law to argue plaintiff lacks standing to pursue claims on behalf

of Hiles's estate and that he cannot represent other parties in this matter due to his pro se status.

8

(Doc. 16 at 5-7; Doc. 31 at 3-4). In response, plaintiff indicates he can represent Hiles's estate because he has been designated by the Ohio Probate Court as the executor and administrator of Hiles's estate. (Doc. 25 at 3). He has submitted an "Entry Appointing Fiduciary-Letters of Authority" from the Preble County, Ohio Probate Court dated January 5, 2009, granting him the power to administer Hiles's estate. (Doc. 21-1). Plaintiff further alleges that he is Hiles's sole beneficiary and heir and as such is the only real party in interest in this matter. (Doc. 25 at 3). In reply, defendants do not dispute that plaintiff has been appointed as the personal representative of Hiles's estate, and they do not appear to dispute that plaintiff can therefore pursue any claims that belong to the estate. (Doc. 31 at 3). However, defendants argue that plaintiff has shown his continued intent to represent other parties' interests in this matter by persisting in listing such parties in the caption of the lawsuit, and he lacks the authority to represent any other parties as a pro se litigant.

Plaintiff's tort claims are brought under the Federal Tort Claims Act (FTCA), which confers jurisdiction on federal courts to hear cases only "under circumstances where the United States, if a private person, would be held liable to the claimant in accordance with the law of the place where the act or omission occurred." *See United States v. Cundiff*, 555 F.3d 200, 271 (6th Cir. 2009); 28 U.S.C. § 1346(b). The Court therefore looks to Ohio law to determine whether plaintiff has standing to pursue his tort claims on behalf of Hiles's estate under the circumstances of this case. Defendants acknowledge that under the Ohio survival statute, Ohio Rev. Code § 2305.21, a cause of action for "mesne profits, or injuries to the person or property, or for deceit or fraud," survives the death of the injured party, and that a personal representative of an estate may pursue a decedent's claims for injury, deceit or fraud on behalf of the estate. (Doc. 16 at 5).

9

*See Williams v. Griffith*, No. 09AP-28, 2009 WL 2469523, at **3-4 (Ohio App. 10 Dist., Aug. 13, 2009) ("[A] personal representative of a decedent's estate stands in the shoes of the decedent to assert claims on behalf of the estate.") (quoting *Hosfelt v. Miller*, No. 97-JE-50, 2000 WL 1741909 (Ohio App. 7 Dist., Nov. 22, 2000)). As the personal representative of Hiles's estate, plaintiff therefore has standing under Ohio law to pursue tort claims on behalf of the estate. The complaint should not be dismissed on the ground plaintiff lacks standing to pursue the tort claims he brings solely on behalf of the estate.

The Court looks to federal law to determine whether plaintiff may proceed pro se. Title 28 U.S.C. § 1654 provides that "In all courts of the United States the parties may plead and conduct their own cases personally. . . ." A plaintiff may not appear pro se where interests other than his own are at stake. *Shepherd v. Wellman*, 313 F.3d 963, 970 (6th Cir. 2002) (citing *Iannaccone v. Law*, 142 F.3d 553, 558 (2d Cir. 1998)). Thus, an executor of an estate may not appear pro se when the estate has beneficiaries and creditors other than the litigant. *Id.* (citing *Pridgen v. Andresen*, 113 F.3d 391, 393 (2d Cir. 1997)). Plaintiff has represented to the Court that he is the only beneficiary of Hiles's estate and, as such, he is not representing any other party's interests in this matter. Accordingly, this matter should not be dismissed on the ground plaintiff is acting as the unauthorized representative of other parties to this lawsuit.

### B. The complaint should be dismissed for lack of subject matter jurisdiction.

There are two types of attacks on subject matter jurisdiction under Rule 12(b)(1): facial attacks and factual attacks. *Thomson v. Ohio State University Hosp.*, 5 F. Supp.2d 574, 575 (S.D. Ohio 1998). A facial attack on the Court's subject matter jurisdiction involves a challenge to the sufficiency of the pleading. *Id.* When resolving a facial attack, the Court liberally

10

construes the allegations of the complaint as true. *Id*. (citations omitted). A factual attack involves a challenge to the existence or non-existence of certain facts which deprive the Court of subject matter jurisdiction. *Id*. at 575-76. Where a party asserts a factual attack, no presumptive truthfulness applies to the factual allegations of the complaint. *Id*. at 576 (citing *Ohio Nat'l Life Ins. Co. v. United States,* 922 F.2d 320, 325 (6th Cir. 1990)). Where a factual controversy exists, the Court must weigh the conflicting evidence to determine whether subject matter jurisdiction exists. *Id*.

Whenever subject matter jurisdiction is challenged pursuant to Rule 12(b)(1), the plaintiff has the burden of proving jurisdiction in order to survive the motion to dismiss. *Moir v. Greater Cleveland Regional Transit Authority*, 895 F.2d 266, 269 (6th Cir. 1990) (citing *Rogers v. Stratton Industries, Inc.,* 798 F.2d 913, 915 (6th Cir. 1986)).

Here, the issues of whether defendants have waived their sovereign immunity from suit, whether the Court is precluded from exercising jurisdiction over plaintiff's claims for veterans' benefits, and whether this action is barred by the statute of limitations involve facial attacks on the Court's jurisdiction. Defendants rely on the allegations of the complaint to argue that plaintiff's complaint fails, on its face, to vest subject matter jurisdiction in this Court. The Court will therefore limit its review to the complaint in resolving these jurisdictional issues.

### 1. The Court lacks subject matter jurisdiction over plaintiff's tort claims.

Defendants move to dismiss plaintiff's tort claims on the ground these federal agencies have not waived their sovereign immunity from suit. (Doc. 16). Subject matter jurisdiction is lacking in a lawsuit against the United States or an agency of the United States unless it consents to suit. *United States v. Testan*, 424 U.S. 392, 399 (1976); *Whittle v. United States*, 7 F.3d 1259,

11

1262 (6th Cir. 1993). *See also CareToLive v. von Eschenbach*, 525 F. Supp.2d 938, 950 (S.D.

Ohio 2007), *aff'd sub nom. CareToLive v. Eschenbach*, 290 F. App'x 887 (6th Cir. 2008) (the

United States may not be sued without its consent, and consent is a prerequisite to jurisdiction)

(citing *United States v. Mitchell,* 463 U.S. 206, 212 (1983); *Reed v. Reno,* 146 F.3d 392, 398 (6th

Cir. 1998)). Absent an express waiver of sovereign immunity, the district court lacks jurisdiction

over a claim against the United States. *Id.* (citing *Mitchell,* 463 U.S. at 212). "Jurisdiction over

any suit against the [United States] Government requires a clear statement from the United States

waiving sovereign immunity . . . together with a claim falling within the terms of the waiver."

*Id.* (citing *United States v. White Mountain Apache Tribe,* 537 U.S. 465, 472 (2003)). A waiver

of sovereign immunity "cannot be implied but must be unequivocally expressed." *Id.* (citing

*Mitchell,* 463 U.S. at 239; *Reed,* 146 F.3d at 398).

      The plaintiff has the burden to identify a waiver of sovereign immunity in order to

proceed with a claim against the United States. *Id.* (citing *Reetz v. United States,* 224 F.3d 794,

795 (6th Cir. 2000)). If the plaintiff cannot identify a waiver, his claim must be dismissed for

lack of jurisdiction. *Id.* (citing *Reetz,* 224 F.3d at 795). *See also Wojton v. U.S.,* 199 F. Supp.2d

722, 726 (S.D. Ohio 2002) (plaintiff has the burden under Fed. R. Civ. P. 8 to set forth the

grounds for the Court's jurisdiction).

      The FTCA provides a limited waiver of the United States' sovereign immunity and vests

the district courts with subject matter jurisdiction over tort claims against the United States.

*Milligan v. United States*, 670 F.3d 686, 692 (6th Cir. 2012); *Levin v. United States*, 133 S.Ct.

1224, 1228 (2013) (citing *Richards v. United States,* 369 U.S. 1, 6 (1962) (the FTCA "was

designed primarily to remove the sovereign immunity of the United States from suits in tort.")).

12

The Act gives federal district courts exclusive jurisdiction over claims against the United States for "injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission" of federal employees acting within the scope of their employment. *Levin*, 133 S.Ct. at 1228  (citing 28 U.S.C. § 1346(b)(1)). Substantively, the FTCA makes the United States liable "to the same extent as a private individual under like circumstances," 28 U.S.C. § 2674, under the law of the place where the tort occurred, 28 U.S.C. § 1346(b)(1). *Levin*, 133 S.Ct. at 1228.

There are enumerated exceptions to the waiver of sovereign immunity set forth in the FTCA. If a claim falls within one of these enumerated exceptions, the court lacks subject matter jurisdiction and the case must be dismissed. *Milligan*, 670 F.3d at 692. Defendants identify one enumerated exception, the "intentional tort exception" found at § 2680(h), as applicable to plaintiff's claims asserted in this case. *See id.* at 695. Section 2680(h) states that the FTCA shall not apply to "[a]ny claim arising out of assault, battery, false imprisonment, false arrest, malicious prosecution, abuse of process, libel, slander, misrepresentation, deceit, or interference with contract rights: . . . ."[4] In determining the applicability of § 2680(h), the substance of the plaintiff's claim and not the theory under which the plaintiff elects to proceed controls. *Id.* (citations omitted). Section 2680(h) excludes intentional as well as negligent misrepresentations from the FTCA's waiver of immunity. *Fitch v. U.S.*, 513 F.2d 1013, 1015 (6th Cir. 1975) (citing *U.S. v. Neustadt*, 366 U.S. 696 (1961)).

Another exception to liability under the FTCA that defendants contend applies to this

---

[4] Section 2680(h) provides an exception to the exception to the FTCA's waiver of immunity for intentional torts committed by law enforcement or investigative officers. 28 U.S.C. § 2680(h). That exception has no applicability to this case.

13

case is provided by the *Feres* doctrine, which exempts the United States from liability under the FTCA for injuries to service members "arising out of or in the course of activity incident to [military] service." *See Feres v. United States*, 340 U.S. 135, 146 (1950). The doctrine applies to claims of negligence, constitutional violations, and intentional torts. *Mackey v. U.S.*, 226 F.3d 773, 775-776 (6th Cir. 2000) (citations omitted). It is premised on three underlying rationales: "(1) the distinctively federal character of the relationship between the government and members of its armed forces; (2) the existence of generous statutory disability and death benefits; and (3) the impact of allowing lawsuits, which would involve the judiciary in sensitive military affairs at the expense of military discipline and effectiveness." *Id.* (citing *United States v. Johnson,* 481 U.S. 681, 689-91 (1987)). *See also Wojton,* 199 F. Supp.2d at 732.

Plaintiff argues that he has referenced a number of laws in the complaint that confer jurisdiction on this Court for the claims he brings. (Doc. 25 at 9). Plaintiff contends that his claims against the various defendants are not barred by the doctrine of sovereign immunity, and he argues the *Feres* doctrine does not apply because this lawsuit is not premised on the injuries Hiles sustained during his wartime service. Rather, plaintiff alleges he claims fraud and negligence in connection with military and medical recordkeeping and the provision of health care to Hiles, which are noncombat activities to which neither the doctrine of sovereign immunity nor the immunity doctrine set forth in *Feres* apply.

Upon a review of the complaint, it is clear that defendants have not waived their sovereign immunity from suit under the FTCA for the claims plaintiff brings in this lawsuit. Plaintiff asserts claims for "misrepresentation" and "deceit" against the ARBA, the Army, the DOD, the VA, and the DVA, based on allegations that defendants covered up the incident that

14

led to Hiles's injuries at the Battle of Peleliu in 1944 and the full extent of those injuries; created fraudulent military and medical records in connection with the incident and Hiles's resulting injuries; and concealed documents related to these matters. (Doc. 6). The FTCA expressly excepts such claims from the Act's waiver of sovereign immunity. *See* 28 U.S.C. § 2680(h).

Moreover, although plaintiff contends that the *Feres* doctrine has no applicability to his claims because they do not arise out of physical injury incurred as a result of combat or activities incidental to military service, plaintiff's claims appear to be premised, at least in part, on the injuries his father sustained during his service in World War II and on the corresponding medical records created during his father's active military service from 1944-46. For instance, plaintiff alleges in the complaint:

- The Army "tampered with [Hiles's] military and medical records" by failing to record "the facts about the incident that almost killed [Hiles] . . . along with half of Company C on October 31, 1944 on Peleliu" and the full extent of Hiles's injuries. (Doc. 6 at 598).

- The Army changed Hiles's diagnosis when he was given his discharge exam to reflect that his condition was normal. (Doc. 6 at 425).

To the extent plaintiff seeks to recover damages for injuries Hiles sustained during his service in World War II and resulting from false records created during his father's active military service, the *Feres* doctrine appears to apply to bar the defendants from liability for such damages.

Accordingly, the waiver of immunity provided under the FTCA is not applicable in this case. The United States has not consented to suit on claims for misrepresentation and deceit pursuant to 28 U.S.C. § 2680(h). Nor has it waived its sovereign immunity from suit for damages incurred by a service member incident to his military service. Accordingly, the Court

15

lacks subject matter jurisdiction over plaintiff's tort claims, and those claims should be dismissed pursuant to Fed. R. Civ. P. 12(b)(1).

Defendants allege that even if they had waived their sovereign immunity to suit on plaintiff's tort claims, plaintiff's tort claims must be dismissed as time-barred under Ohio's applicable statute of limitations and Ohio's four-year statute of repose for medical malpractice claims. (Doc. 17, n. 11).

Federal law supplies the appropriate statute of limitations for tort claims brought under the FTCA. *See* 28 U.S.C. § 2401(b).[5] Section 2401(b) establishes a two-year limitations period for such claims. *Huddleston*, 485 F. App'x at 745; *Wojton*, 199 F. Supp.2d at 726. Within that period of time, the claim must be presented "in writing to the appropriate Federal agency" that allegedly committed the tortious act. *Id.* Furthermore, if the claim is denied by the agency, the claimant has six months from the date of the mailing of the notice of denial to file in court. *Id.* "Because the ability to file a tort suit against the United States arises by virtue of the Government's volitional waiver of its sovereign immunity, a failure to file such within the statutory period of limitations divests a district court of its subject matter jurisdiction." *Id.* (citations omitted).

The Court construes defendants' limitations defense as a facial attack on the Court's

---

[5] Section 2401(b) provides: "A tort claim against the United States shall be forever barred unless it is presented in writing to the appropriate Federal agency within two years after such claim accrues or unless action is begun within six months after the date of mailing, by certified or registered mail, of notice of final denial of the claim by the agency to which it was presented." Although some state statutes of repose have been held to be substantive requirements applicable to suits brought under the FTCA, *see, e.g., Huddleston v. U.S.*, 485 F. App'x 744, 746 (6th Cir. 2012) (Tennessee), the Court need not address whether the Ohio statute of repose for medical malpractice claims, Ohio Rev. Code. § 2305.113(C)(1), applies here because plaintiff's complaint does not present a medical malpractice claim.

subject matter jurisdiction because defendants do not challenge the facts in connection with this defense. The Court finds the tort claims presented by plaintiff accrued well beyond two years before plaintiff instituted this lawsuit. Plaintiff alleges the initial wrongdoing occurred when the Army made false entries in Hiles's records during his active military service in 1944; further wrongdoing occurred upon Hiles's discharge from service in 1946 when notations were made in his records indicating that his condition upon discharge was normal; Hiles first made a claim for benefits in 1948, which was improperly denied; and Hiles repeatedly appealed his disability ratings from 1962 to 1967. Although Hiles and plaintiff continued to pursue claims and appeals in the decades that followed, it is clear from the allegations of the complaint and plaintiff's response to defendants' motion to dismiss that such claims were not timely filed. No justification for the delay is apparent from the complaint. Plaintiff asserts that the Army controlled Hiles's records (Doc. 25 at 11), but he does not allege that either he or Hiles made a timely request for such records. In fact, plaintiff states in the complaint that he initially requested the records in March 2007 and received them 18 months later in October 2008. (Doc. 6 at 424). The tort claims asserted in the complaint should therefore be dismissed as untimely. *See Wojton*, 199 F. Supp.2d at 729.

### 2. The Court lacks jurisdiction to review benefit decisions by the VA.

Defendants argue that the Court lacks subject matter jurisdiction over any claims by plaintiff seeking veterans' benefits because judicial review of such claims is precluded by statute. Plaintiff concedes the complaint "has a connection to" the VA claims and appeal process, but he argues this matter involves wrongdoing that is unrelated to VA disability ratings and benefits. (Doc. 25 at 16, 17).

17

The Veterans' Judicial Review Act of 1988 (VJRA), Pub.L. No. 100-687, Tit. III, 102 Stat. 4105, 4113-4122 (codified in various provisions of Title 38 of the Unites States Code), established a multi-tiered framework for the adjudication of claims regarding veterans' benefits. Under the statutory scheme, a claimant initiates the process by filing for benefits with a regional office of the DVA, which conducts the initial review. *Beamon v. Brown,* 125 F.3d 965, 967 (6th Cir. 1997). An appeal from the regional officer's decision can be taken to the Board of Veterans Appeals (BVA). 38 U.S.C. § 7104(a). The Court of Appeals for Veterans Claims (CVA), an Article I court, has exclusive jurisdiction to review decisions of the BVA, 38 U.S.C. § 7252(a), and the United States Court of Appeals for the Federal Circuit has exclusive jurisdiction to review an appeal of a decision by the CVA. 38 U.S.C. § 7292. Such a decision is final, subject to review by the United States Supreme Court upon certiorari. *See* 38 U.S.C. § 7292(c). Because jurisdiction to review VA benefits decisions is limited by the statutory scheme, "it is clear that district courts do not have jurisdiction to hear claims concerning benefits." *Wojton,* 199 F. Supp.2d at 730 (citing *Beamon,* 125 F.3d at 974). The Secretary of the VA "shall decide all questions of law and fact necessary to a decision by the Secretary under a law that affects the provision of benefits to veterans," 38 U.S.C. § 511(a), subject to review only pursuant to the statutory scheme. *Veterans for Common Sense v. Shinseki,* 678 F.3d 1013, 1022 (9th Cir. 2012).

Consistent with the statutory framework, this Court lacks subject matter jurisdiction over the claims plaintiff brings here for veterans' benefits allegedly due Hiles. Although plaintiff attempts to frame all of his claims as tort claims stemming from misrepresentations and deceit, at least some of plaintiff's claims are "essentially collateral attacks on the VA's exclusive authority to determine benefits issues." *See Wojton,* 199 F. Supp.2d at 731. For instance, as his second

18

claim for relief, plaintiff challenges the VA's reduction of Hiles's disability rating from 100% to

70% and seeks to recover benefits for the period dating from 1948 to the Tiger Team's decision

on appeal in 2006, calculated on the basis of the VA's current rating tables.  (Doc. 6 at 442, 524).

In support of his third and fourth claims for relief, plaintiff alleges that the VA denied Hiles the

correct disability rating and benefits based on fraudulent medical records, and he seeks an award

on behalf of Hiles's estate based on the correct disability rating.  (*Id*. at 526, 560).  Plaintiff

alleges in connection with the fifth claim for relief that the VA conspired with the Army to

defraud Hiles of the correct rating that accounted for all of Hiles's combat related injuries.  (*Id*.

at 562).  Plaintiff alleges elsewhere in the complaint that he is seeking to recover benefits dating

back to 1948 based on the correct disability rating.  (Doc. 6 at 441, 594).  To the extent plaintiff

seeks an order from this Court for the payment of backdated statutory benefits, the Court would

be required to go back over a period that exceeds 60 years and "probe deeply into the mechanics

of how such benefits are calculated by the VA, something it has no authority to do."  *See Wojton*,

199 F. Supp.2d at 731.  *See also Beamon*, 125 F.3d at 971.  Rather, it is the VJRA that provides

the sole means for plaintiff to obtain such relief.  *Wojton,* 199 F. Supp.2d at 731.  Thus, the

motion to dismiss should be granted for lack of subject matter jurisdiction to the extent the

complaint challenges the VA's decisions relating to the provision of veterans' benefits to Hiles.

### 3. Plaintiff has failed to identify any other waiver of sovereign immunity and basis for the Court's jurisdiction.

Plaintiff references a number of statutes that allegedly vest the Court with subject matter

jurisdiction over this lawsuit.  In addition to the FTCA, plaintiff generally cites 5 U.S.C. §§ 701-

708 (the Administrative Procedure Act) (Doc. 25 at 9), and certain federal and state criminal

statutes, such as Ohio Rev. Code § 2913.42, which impose criminal penalties for tampering with records.[6] Plaintiff has failed to show that any statutory provision on which he relies waives the federal defendants' sovereign immunity and provides jurisdiction over the claims asserted in this lawsuit. Furthermore, 28 U.S.C. § 1331, the federal question jurisdictional statute, is not a general waiver of sovereign immunity, *Whittle*, 7 F.3d at 1262, and "neither the Fifth Amendment nor any other provision of the United States Constitution creates or permits a federal cause of action allowing recovery in tort." 32 C.F.R. § 536.85(a). Thus, plaintiff has not carried his burden of proving subject matter jurisdiction exists. *See Moir*, 895 F.2d at 269.

## VI. Conclusion

For these reasons, plaintiff has failed to establish a waiver of sovereign immunity and a basis for the Court's jurisdiction over his claims against the federal defendants. Defendants' motion to dismiss the complaint pursuant to Fed. R. Civ. P. 12(b)(1) should therefore be granted.

### IT IS THEREFORE ORDERED THAT:

(1) Plaintiff's "Motion to Admit and Extend" (Doc. 21) be GRANTED insofar as plaintiff seeks to submit the documentation attached to the motion (Doc. 21-1) and DENIED in all other respects.

(2) Plaintiff's "Motion to Stay and Extend" (Doc. 22) be DENIED.

(3) Plaintiff's "Motion for Oral Argument, Request for Hearing, Personal Appeal" (Doc. 32) be DENIED.

(4) Plaintiff's "Motion to Admit Legal Evidence and Addendum that Supports All Claims" (Doc. 33) be DENIED.

---

[6] Plaintiff cites other provisions (32 U.S.C. §§536.22-35) which are not found in the United States Code.

## IT IS THEREFORE RECOMMENDED THAT:

(1)  Defendants' motion to dismiss (Doc. 15) be GRANTED.

(2)  The case be DISMISSED and TERMINATED on the docket of the Court.


Date: 3/25/2013

Karen L. Litkovitz
United States Magistrate Judge

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

MARSHALL G. HILES,                                      Case No. 1:12-cv-673
    Plaintiff,                                       Weber, J.
                                                          Litkovitz, M.J.

     vs.

ARMY REVIEW BOARD
AGENCY, et al.,
    Defendants.

### NOTICE

Pursuant to Fed. R. Civ. P. 72(b), **WITHIN 14 DAYS** after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. This period may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation is based in whole or in part upon matters occurring on the record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections **WITHIN 14 DAYS** after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).

**SENDER:** COMPLETE THIS SECTION

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Marshall G Hiles
208 Bruce St.
Eaton, OH 45320

COMPLETE THIS SECTION ON DELIVERY

A. Signature

X ☒ Agent
  ☐ Addressee

B. Received by ( Printed Name)     C. Date of Delivery

D. Is delivery address different from item 1?  ☐ Yes
   If YES, enter delivery address below:       ☐ No

3. Service Type
   ☒ Certified Mail        ☐ Express Mail
   ☐ Registered            ☐ Return Receipt for Merchandise
   ☐ Insured Mail          ☐ C.O.D.

4. Restricted Delivery? (Extra Fee)            ☐ Yes

2. Article Number
   (Transfer from service label)

7011 3500 0001 5345 5420

PS Form 3811, February 2004      Domestic Return Receipt      102595-02-M-1540