## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

MARSHALL G. HILES,
        Plaintiff,

    vs.

ARMY REVIEW BOARD
AGENCY, et al.,
        Defendants.

Case No. 1:12-cv-673

Black, J.
Litkovitz, M.J.

**ORDER AND REPORT
AND RECOMMENDATION**

Plaintiff Marshall G. Hiles, proceeding pro se, brings this action individually and

purportedly on behalf of the estate and heirs of his father, Charles D. Hiles, deceased (hereafter

"Hiles"), against a number of federal agencies and departments. Plaintiff names as defendants

the Army Review Board Agency (ARBA), the United States Army (Army), the Department of

Defense (DOD), and the United States Department of Veterans Affairs (VA). (Doc. 6). This

matter is before the Court on the following motions: (1) defendants' motion for summary

judgment and renewed motion to dismiss Count II of the complaint (Doc. 97), plaintiff's

opposing memorandum and notice of filing of exhibits in opposition to the motion for summary

judgment (Docs. 98, 100), and defendants' reply memorandum (Doc. 102); (2) plaintiff's motion

for recusal (Doc. 99), defendants' opposing memorandum (Doc. 102), and plaintiff's reply in

support of the motion (Doc. 103); and (3) plaintiff's motion to vacate in part the Court's Order

dismissing Counts III through VI of the complaint issued on September 16, 2014 (Doc. 101),

defendants' response in opposition (Doc. 102), and plaintiff's reply in support of the motion

(Doc. 103).

## I. Introduction

This lawsuit arises out of injuries Hiles sustained in World War II during the 1944 Battle of Peleliu and subsequent efforts by Hiles and plaintiff to obtain what they believed to be fair disability ratings and just compensation for those injuries. The lawsuit also involves plaintiff's related efforts to correct military records generated during Hiles's military service to accurately reflect the cause and extent of Hiles's injuries. (Doc. 6). Plaintiff has continued these efforts beyond Hiles's death in 2007.

Plaintiff presented six claims for relief in the complaint. Only two claims are relevant for purposes of this Report and Recommendation.[1] In support of his first claim for relief, plaintiff alleges that the Army falsely reported in records documenting the results of Hiles's discharge exam conducted on January 6, 1946, that "everything was normal," including Hiles's mental status. (Doc. 6 at PAGE ID #425, 439). Plaintiff alleges that as a result of the Army's fraudulent conduct, Hiles never received from the VA the proper health care he required and the financial benefits to which he was entitled. (*Id*.) Plaintiff seeks a Court Order directing the ARBA to correct Hiles's military records to reflect the full extent of the injuries Hiles suffered at the Battle of Peleliu in 1944.

Plaintiff's second claim for relief alleges Hiles was denied the correct disability rating based on repeated acts of misconduct by the VA. Plaintiff seeks retroactive disability benefits from 1948, when Hiles initially applied for benefits, to 2006, when the unit responsible for handling plaintiff's expedited appeal rated Hiles as having a 100% service-connected disability. Plaintiff also challenges the VA's subsequent reduction of the disability rating from 100% to 70%. (Doc. 6 at PAGE ID # 440).

---

[1] As explained *infra*, plaintiff's third, fourth, fifth and sixth claims for relief were dismissed by Order dated September 16, 2014. (Doc. 67).

2

On March 25, 2013, the undersigned issued a Report and Recommendation on defendants' motion to dismiss the complaint for lack of jurisdiction over the subject matter of the complaint (Doc. 15). (Doc. 38). The undersigned recommended that the complaint be dismissed for want of subject matter jurisdiction and ordered the dismissal of a number of plaintiff's motions, including a motion to admit evidence, a motion for oral argument, and a motion to stay. (*Id.*). Judge Herman Weber issued an Order dated September 16, 2014, adopting the Report and Recommendation as modified. (Doc. 67). Judge Weber found that Count I was not properly dismissed because the District Court has subject matter jurisdiction to review the decisions of the Army Board for Correction of Military Records (ABCMR). (*Id.*). Judge Weber adopted the undersigned's recommendation as to the second through sixth claims for relief and dismissed those claims with prejudice. (*Id.*). On December 10, 2014, Judge Weber granted in part plaintiff's motion for reconsideration of the September 2014 Order as to the second claim for relief in light of the Sixth Circuit's decision in *Anestis v. U.S.*, 749 F.3d 520 (6th Cir. 2014). (Doc. 80). On that same date, Judge Weber transferred the case to the Clerk for reassignment, and the case was reassigned to Judge Timothy Black for all further proceedings. (Doc. 81).

The undersigned issued an Order dated January 26, 2015, which explained the scope of Judge Weber's Order on the motion to reconsider as follows:

> An Order was issued on December 10, 2014, granting in part plaintiff's motion for reconsideration. (Doc. 80). The Court explained that although it had denied plaintiff's motion to amend/motion for summary judgment for lack of subject matter jurisdiction over plaintiff's claims, plaintiff had cited a case in his reply brief filed on November 17, 2014 (Doc. 78), that called the Court's subject matter jurisdiction ruling into question. (Doc. 80 at 6-7, citing *Anestis v. U.S.*, 749 F.3d 520 (6th Cir. 2014)). The Court found that *Anestis* "advised that in certain circumstances, [district courts] do have subject matter jurisdiction over claims against the Veterans Administration and certain tort claims are not precluded by sovereign immunity." (*Id.*). The Court decided that the parties should have an opportunity to brief whether "this advice to the United States District Court

3

applies to plaintiff's claims in this case," following which the Court would make a determination on the issue. (*Id*. at 7-8). The Court granted plaintiff's motion to reconsider the Order dismissing plaintiff's second, third, fourth, fifth and sixth claims with prejudice for lack of subject matter jurisdiction (Doc. 67), but only as to the second claim[.] (Doc. 80 at 8).

(Doc. 89 at 2-3). The Court clarified that the procedural posture of the case stood as follows:

- The first claim for relief remained pending before the Court in light of Judge Weber's Order dated September 16, 2014, which modified the undersigned's Report and Recommendation and found there is subject matter jurisdiction over this claim. (Doc. 67).

- The parties were to brief whether the District Court has subject matter jurisdiction over plaintiff's second claim for relief pursuant to the Court's Order of December 10, 2014. (Doc. 80).

(*Id*. at 4, 6).

Plaintiff subsequently submitted a brief on the jurisdictional issue (Doc. 96), and defendants filed their renewed motion to dismiss Count II on the ground the Court lacks subject matter jurisdiction over the claim. (Doc. 97). Additionally, plaintiff filed a motion to vacate the Court's ruling dismissing Counts III through V of the Complaint for lack of subject matter jurisdiction and a motion for Judge Black and the undersigned Magistrate Judge to recuse themselves from this case. (Docs. 99, 101). The motions are ripe for decision.

## II. Motion for recusal (Doc. 99)

### A. Standard

Plaintiff has filed a motion for recusal requesting that both Judge Black and Magistrate Judge Litkovitz recuse themselves from this case. In support of his motion, plaintiff relies on 28 U.S.C. §§ 144 and 455, which govern recusals in civil cases. Section 144 provides, in pertinent part:

Whenever a party to any proceeding in a district court makes and files a timely and sufficient affidavit that the judge before whom the matter is pending has a

4

personal bias or prejudice either against him or in favor of any adverse party, such
judge shall proceed no further therein, but another judge shall be assigned to hear
such proceeding.

28 U.S.C. § 144. The statute requires that such affidavit "shall state the facts and the reasons for

the belief that bias or prejudice exists. . . ."

Judges and magistrate judges are bound by the recusal standard set forth in 28 U.S.C. §

455(a): "Any justice, judge, or magistrate judge of the United States shall disqualify himself in

any proceeding in which his impartiality might reasonably be questioned." *Ragozzine v.*

*Youngstown State Univ.*, 783 F.3d 1077, 1079 (6th Cir. 2015) (quoting 28 U.S.C. § 455(a)).

Section 455(b) sets forth the following additional circumstances under which a judge shall

disqualify himself: (1) the judge "has a personal bias or prejudice concerning a party, or

personal knowledge of disputed evidentiary facts concerning the proceeding"; (2) the judge in

private practice served as a lawyer in the matter in controversy, or a lawyer with whom the judge

"previously practiced law served during such association as a lawyer concerning the matter, or

the judge or such lawyer has been a material witness concerning" the matter; (3) the judge has

served in governmental employment and in such capacity "participated as counsel, adviser, or

material witness concerning the proceeding or expressed an opinion concerning the merits of the

particular case in controversy"; (4) the judge knows that he, his spouse or a minor child residing

in his household "has a financial interest in the subject matter in controversy or in a party to the

proceeding, or any other interest that could be substantially affected by the outcome of the

proceeding"; or (5) the judge, his spouse, or an individual or a spouse of the individual within the

third degree of relationship to either one of them is a party to the proceeding or an officer,

director or trustee of a party; is acting as a lawyer in the proceeding; is known by the judge to

5

have an interest that could be substantially affected by the outcome of the proceeding; or is to the judge's knowledge likely to be a material witness in the proceeding. 28 U.S.C. § 455(b).

Section 455(a) requires a judge to recuse himself "if a reasonable, objective person, knowing all of the circumstances, would have questioned the judge's impartiality." *Ragozzine*, 783 F.3d at 1079 (quoting *Hughes v. United States*, 899 F.2d 1495, 1501 (6th Cir. 1990) (discussing 28 U.S.C. § 455(a)). *See also Moniz v. Cox*, 512 F. App'x 495, 501 (6th Cir. 2013) ("[A] judge should disqualify himself only if there is a reasonable factual basis for doubting his impartiality," as determined from an objective standpoint) (quoting *Khan v. Yusufji*, 751 F.2d 162, 164 (6th Cir. 1984)). "A bias sufficient to justify recusal must be a personal bias as distinguished from a judicial one, arising out of the judge's background and association and not from the judge's view of the law." *Id*. at 502 (quoting *United States v. Story*, 716 F.2d 1088, 1090 (6th Cir. 1983) (internal quotation marks omitted)). As the Supreme Court has explained:

> First, judicial rulings alone almost never constitute a valid basis for a bias or partiality motion. *See United States v. Grinnell Corp.,* 384 U.S. [563, 583 (1966)]. In and of themselves (i.e., apart from surrounding comments or accompanying opinion), they cannot possibly show reliance upon an extrajudicial source; and can only in the rarest circumstances evidence the degree of favoritism or antagonism required [] when no extrajudicial source is involved. Almost invariably, they are proper grounds for appeal, not for recusal. Second, opinions formed by the judge on the basis of facts introduced or events occurring in the course of the current proceedings, or of prior proceedings, do not constitute a basis for a bias or partiality motion unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible.

*Liteky v. United States,* 510 U.S. 540, 555 (1994).

**B. The Magistrate Judge's recusal is not warranted.**

Plaintiff has not established a basis for this Magistrate Judge's recusal. Initially, plaintiff has not filed an affidavit pursuant to 28 U.S.C. § 144 such as would require the Magistrate Judge to proceed no further in this case.

Nor has plaintiff asserted a valid basis under 28 U.S.C. § 455 for this Magistrate Judge to recuse herself from this lawsuit. The crux of plaintiff's motion to recuse as it pertains to the undersigned is two-fold. First, plaintiff alleges that the Magistrate Judge has demonstrated her bias by denying plaintiff his right to be heard. (Doc. 99 at 5-6). Specifically, plaintiff alleges that the Magistrate Judge denied his request for oral argument and his right to present evidence in connection with defendants' motion to dismiss. Plaintiff alleges that the Magistrate Judge's Order and Report and Recommendation issued on March 25, 2013 (Doc. 38), which denied his request for an oral hearing and recommended that the complaint be dismissed, demonstrates he cannot obtain justice in this Court. Plaintiff further contends that the Magistrate Judge has issued erroneous rulings in this case and has abused her discretion, and he speculates that Orders issued by Judge Weber (Docs. 66, 67) were rendered "to provide cover for the Magistrate's abuses of discretion." (Doc. 99 at 9). Second, plaintiff alleges that the Magistrate Judge has acted in concert with counsel for the government to deny plaintiff the opportunity to receive a fair hearing. (Doc. 99 at 5-7). Based on the fact that defendants' counsel were assigned to this case and entered their appearance only four days before an answer to the complaint was due, plaintiff speculates that counsel were aware they could devote little time to this matter and could rely on "allies" such as the Magistrate Judge to rule in their favor. (*Id*. at 6).

Plaintiff's speculative and unfounded allegations are insufficient to demonstrate bias or prejudice on the part of the undersigned Magistrate Judge and do not establish a basis for recusal. Plaintiff's allegations that the Magistrate Judge colluded with defendants' counsel to resolve this case in defendants' favor are mere speculation, are not logical, and are not founded on any action taken by the Magistrate Judge. Plaintiff's remaining allegations consist of challenges to the rulings issued in this case, which cannot establish a basis for recusal but are simply grounds for

7

appeal. *Liteky*, 510 U.S. at 555. Plaintiff has not gone beyond challenging the Court's rulings and made the necessary showing that the Magistrate Judge relied on knowledge acquired outside the proceedings or "displayed a deep-seated favoritism or antagonism that would make fair judgment impossible." *Id*.

In short, plaintiff has not presented any facts that would create a reasonable basis for doubting this Magistrate Judge's impartiality. Plaintiff's allegation of bias are conclusory and do not create an appearance of bias or conflict. Accordingly, plaintiff's motion for recusal of the undersigned Magistrate Judge is denied.

### C. Plaintiff's motion for recusal of Judge Black should be denied.

Plaintiff's motion for Judge Black to recuse relates to two cases over which Judge Black has presided: the present case and *Hiles v. Novastar Mortgage, Inc.*, *et al.*, Case No. 1:12-cv-392 (S.D. Ohio) (*Novastar*). (Doc. 99 at 9-14). Plaintiff alleges that Judge Black has denied plaintiff and his co-plaintiffs in *Novastar* their constitutional rights, including their right to be heard. Plaintiff alleges that Judge Black demonstrated his bias in *Novastar* by ordering that the case be dismissed without holding a hearing or granting plaintiffs a jury trial in violation of their Seventh Amendment rights; showing a predisposition to protect defendant Deutsche Bank, a client of the law firm where Judge Black was previously a partner; and attacking plaintiff personally in his decisions dismissing the case. Plaintiff alleges that the Sixth Circuit Court of Appeals in *Novastar* declined to take judicial notice of evidence that plaintiff should have been able to present to the appellate court based on Judge Black's erroneous ruling below and declined to overturn Judge Black's decision dismissing plaintiff's case. Plaintiff speculates that the assignment of Judge Black to this case, *Novastar*, and a third case where the defendant was represented by a partner from Judge Black's former firm, which had contributed to Judge

Black's election campaigns, is suspicious and raises the question of whether a conspiracy is afoot in the District Court.

Plaintiff's motion for Judge Black's recusal is baseless. Plaintiff has not filed an affidavit pursuant to 28 U.S.C. § 144 such as would require Judge Black to proceed no further in this case. Moreover, plaintiff has not asserted a valid basis for Judge Black to recuse himself from the present action under 28 U.S.C. § 455. Plaintiff relies primarily on Judge Black's rulings and alleged personal attacks made against him in *Novastar* to support his motion for recusal in this case. However, plaintiff has not identified any personal attacks in the prior case which could possibly show Judge Black harbors any type of bias against plaintiff in this case. Further, any judicial rulings Judge Black made in the prior case cannot establish bias or prejudice in this case.

More importantly, the Sixth Circuit rejected plaintiff's allegations of bias in *Novastar* because they were "conclusory as a whole" and did "not support an appearance of bias or conflict of interest." *Novastar*, Doc. 35 at 7. The Court of Appeals found that "[c]ritical judicial remarks 'ordinarily do not support a bias or partiality challenge.'" *Id*. (citing *Liteky*, 510 U.S. at 551, 555). The Court also determined that "no reasonable person would question Judge Black's impartiality" based on his former firm's representation of the defendant before him in an unrelated case. *Id*. (citing *Nat'l Auto Brokers Corp. v. Gen. Motors Corp*., 572 F.2d 953, 958 (2d Cir. 1978); *Davis v. Wendy's Int'l Inc*., No. 98-5037, 1999 WL 552597, at *7 (6th Cir. July 23, 1999)). Further, the Court rejected plaintiff's allegations that Judge Black should recuse himself based on allegations that attorneys for the defendant had contributed to his election campaigns. The Court found that campaign contributions by attorneys do not automatically establish bias (*Id*., citing *Caperton v. A.T. Massey Coal Co*., 556 U.S. 868, 884 (2009)), and any such allegations were "particularly tenuous" in that case as Judge Black no longer holds elected

9

office. *Id*. Finally, the Court stated that "judicial rulings will almost never serve as a valid basis for recusal and are most often simply grounds for appeal." *Id*. (citing *Liteky*, 510 U.S. at 555).

The same reasoning that led the Sixth Circuit to conclude that Judge Black's recusal was not warranted in *Novastar* applies with equal force here. For the same reasons stated by the Court of Appeals, plaintiff's allegations of bias do not warrant Judge Black's recusal in this lawsuit. Plaintiff has not presented any new facts that would create a reasonable basis for questioning Judge Black's impartiality in the present lawsuit. Plaintiff's allegations of bias are conclusory and speculative and are based largely on Judge Black's judicial rulings in the previous lawsuit. These allegations do not create an appearance of bias or conflict of interest. Accordingly, plaintiff's motion for Judge Black's recusal should be denied.

### III. Motion for summary judgment on Count I of the complaint and renewed motion to dismiss Count II (Doc. 97).

Defendants the ARBA, United States Department of Veterans Affairs, Robert A. McDonald[2], United States Army, and United States Department of Defense move for summary judgment in their favor on Count I of the complaint. Defendants allege they are entitled to summary judgment on Count I because the decision of the Army Board for Correction of Military Records (ABCMR) declining to permit amendment of the military records at issue was not arbitrary and capricious under the Administrative Procedure Act (APA). The federal defendants also move the Court to uphold its prior ruling that subject matter jurisdiction over Count II of the complaint is lacking.

---

[2] Defendants have given notice that although Eric Shinseki, the former Secretary of the Department of Veterans Affairs, was originally named as a defendant to this lawsuit, Mr. Shinseki was succeeded by Secretary McDonald on July 29, 2014. (Doc. 97 at 2, n.2). Insofar as plaintiff's claims are brought against former Secretary Shinseki, Secretary McDonald is automatically substituted as a defendant for Mr. Shinseki pursuant to Fed. R. Civ. P. 25(d).

**A. Motion for summary judgment on Count I**

*1. The parties' arguments*

In Count I of the complaint, plaintiff (1) challenges the decision of the ARBA declining to correct Hiles's military records, and (2) seeks a Court order directing the ARBA to correct Hiles's military records to reflect the full extent of the injuries Hiles suffered at the Battle of Peleliu in 1944.[3] (*See* Doc. 6).

The Administrative Record and other filings of record include the following facts related to plaintiff's first claim for relief: While serving in the Army during World War II, Hiles was wounded at the Battle of Peleliu. (AR 45-46). Hiles was honorably discharged from the Army in 1946. (AR 46). He made his initial claim for veterans benefits (VA benefits) in 1948. (Doc. 94 at PAGE ID #2268-2270). Hiles was rated with a 30% disability and awarded disability compensation for a "[n]ervous condition" beginning June 1948. (AR 302-03). It was determined that the conditions of "scar, right leg, residuals, right ankle and neuritis, right arm" were not disabling "to a compensable degree." (*Id.*). His disability rating was subsequently reduced to 10%. (See AR 316).

On March 21, 2011, plaintiff filed a Form DD 149, Application for Correction of Military Record, under 10 U.S.C. § 1552. (AR 111). Plaintiff submitted supporting documents with the application. (AR 112-351). Plaintiff sought assistance from Congressional representatives in connection with his application. On April 8, 2011, Rich Schweigert of the ARBA responded to a letter the ARBA had received from United States Senator Robert Portman. (AR 103). The letter informed Senator Portman that the ARBA had received an application by plaintiff on March 25,

---

[3] Defendants allege that the ARBA is the "over-arching entity above the ABCMR" and that the ABCMR is the entity that actually made the administrative decision at issue. (Doc. 97 at 2, n.2). The record supports defendants' allegation that the ABCMR made the administrative decision in question. (Doc. 92, Administrative Record (AR) 40-41).

2011, for correction of Hiles's military records. Mr. Schweigert advised Senator Portman that the completion time for most applications is approximately 12 months and that both his office and plaintiff would be notified of the ARBA's decision. On April 26, 2012, Mr. Schweigert sent a letter to United States Representative John Boehner in response to his inquiry concerning Hiles's medical records based upon plaintiff's application. (AR 60). Mr. Schweigert stated that the ABCMR had corrected Hiles's records to show award of the Bronze Star Medal; however, the ABCMR had not reviewed or considered plaintiff's request made in his original application for correction of various military medical records. Mr. Schwegiert stated that the ABCMR could not reopen plaintiff's application at that time because the Board did not have a copy of plaintiff's complete application with the specific medical documents plaintiff sought to have corrected. Mr. Schweigert advised that upon receipt of the complete file with those specific medical documents and supporting evidence that documented the errors, the ABCMR would review and consider plaintiff's initial request. Finally, Mr. Schweigert responded to an inquiry Representative Boehner made on May 11, 2012, by acknowledging receipt of extensive supporting documents in connection with plaintiff's application to include medical records from World War II. (AR 51). Mr. Schweigert expressed his understanding that plaintiff sought "a correction to his father's medical records to show the 'severity of what happened to him [and] the extent of his injuries and how they actually occurred to him,' based on his initial application of March 21, 2011." (*Id.*). Mr. Schweigert informed Representative Boehner that the application and supporting evidence were under review.

After a three-member panel of the ABCMR reviewed plaintiff's application and the supporting documents, the ABCMR notified plaintiff by letter dated July 25, 2012, that it had denied the application. (AR 40-41). The ABCMR's Record of Proceedings dated July 19, 2012,

states that although it appeared plaintiff had not filed the application for correction of his father's

military records within three years after discovery of the alleged error pursuant to 10 U.S.C. §

1552(b), it had elected to conduct a substantive review of the case and to excuse plaintiff's

failure to timely file but only to the extent relief, if any, was granted. (AR 45). The ABCMR

stated that Hiles's records were not available for review because they were believed to have been

lost or destroyed in a fire at the National Personnel Records Center in 1973 that destroyed

approximately 18 million service members' records. (AR 45). However, the ABCMR found

that plaintiff had provided sufficient documents for the ABCMR to conduct a "fair and impartial

review" of the case, including certain service medical records of Hiles; multiple correspondence

letters with the VA; and multiple VA examination records, clinical records, charts and reports.

(AR 44).

The ABCMR summarized the following evidence that it had considered in connection

with plaintiff's application: Hiles "WD AGO Form 53-55" shows he was inducted in the United

States Army on July 21, 1943, and entered active service in Ohio on August 11, 1943. At the

time of separation, he held the military occupational specialty of Light Machine Gunner. The

WD AGO Form 53-55 shows he served in the Asiatic Pacific Theater of operations from July 8,

1944 to December 3, 1945. He was honorably discharged on January 8, 1946. The WD AGO

Form 53-55 shows he received a number of commendations. The WD AGO Form 53-55 also

lists "Palau Island 31 October 1944" under "Wounds Received in Action." On September 29,

2011, Hiles was issued a DD Form 215 (Correction to DD Form 214 - Certificate of Release or

Discharge from Active Duty) that added an award of the Bronze Star Medal. Over the years,

Hiles communicated with the VA regarding service-connected disability compensation for

various conditions including post-traumatic stress disorder, brain injury, lower back injury, ankle injury, tinnitus, and neuritis in the shoulder. Hiles died in 2007. (AR 45-46).

The ABCMR determined that the evidence presented did "not demonstrate the existence of a probable error or injustice." (AR 47). The ABCMR therefore concluded that "the overall merits" of the case were "insufficient as a basis for correction of the records of the individual concerned." (*Id*.). The ABCMR based its determination on the following findings:

1. It would not be proper to change any of the medical documents provided by plaintiff which would, in effect, alter a diagnosis in Hiles's medical records given that medical records reflect the observations and opinions of medical professionals at the time they were created and alteration of a diagnosis in those records after the fact "may lead to fundamental questions about the veracity of the records in this case and in general."

2. Plaintiff failed to provide the independent and corroborating evidence necessary to alter the diagnosis made by a physician and recorded in the medical records at the time of the diagnosis, or any other incorrect information plaintiff contends is included in Hiles's medical records.

3. The preponderance of evidence shows that military medical officials made various entries in Hiles's medical records; each diagnosis was duly recorded in Hiles's medical records; and plaintiff did not present sufficient evidence to alter the basis of the Army's diagnoses. In the absence of evidence to the contrary, it is presumed that Hiles "was diagnosed by competent military medical authorities and his medical records were properly annotated."

(AR 46).

Defendants allege they are entitled to summary judgment as a matter of law on plaintiff's first claim for relief seeking judicial review of the administrative findings and conclusions of the ABCMR. Defendants contend that the agency decision at issue was not arbitrary or capricious within the meaning of the APA. Defendants contend that the ABCMR thoroughly evaluated the evidence submitted on Hiles's claim and made a reasonable decision based on the evidence before it. (Doc. 97 at 6-9).

In response, plaintiff alleges that the ABCMR's conduct was arbitrary and capricious and violated 18 U.S.C. §1001[4], 5 U.S.C. § 552(a)[5], and the Uniform Code of Military Justice, 10 U.S.C. § 907.[6] (Doc. 98). Plaintiff alleges that the July 2012 ABCMR decision was arbitrary and capricious because plaintiff provided "independent and corroborating evidence" to alter the diagnosis Hiles received. (*Id*. at 9-10).

Plaintiff also alleges that the ABCMR's denial of his request to correct the record was arbitrary and capricious because the denial is "filled with errors." (*Id*. at 7-8). Plaintiff alleges that the denial does not reflect the correct date plaintiff filed his application.

Plaintiff further challenges the ABCMR's decision as arbitrary and capricious based on his allegation that defendants made false representations about the receipt and availability of Hiles's records. Plaintiff alleges that the ABCMR falsely claimed it did not receive evidence from plaintiff and required him to send the evidence a second time. (*Id*., citing AR 51, 60, 103). Plaintiff alleges that the administrative record does not accurately reflect that the ABCMR received two copies of "Plaintiff's Form 149 with evidence," which demonstrates the ABCMR's "gross negligence" and shows that the record before the ABCMR was not accurate or complete. (*Id*. at 4-5). Plaintiff alleges that defendants have made contradictory representations that the evidence presented by plaintiff was reviewed by the ABCMR, while also representing that Hiles's records are not available to review because they were apparently destroyed in a fire at the

---

[4] Section 1001 is criminal statute that provides for the imposition of a fine or term or imprisonment on anyone who makes a fraudulent or false statement or entry in any matter within the federal government's jurisdiction. 18 U.S.C. § 1001.

[5] Section 552(a) is a provision of the APA that requires each federal agency to make available to the public specified information. 5 U.S.C. § 552.

[6] Section 907 states: "Any person subject to this chapter who, with intent to deceive, signs any false record, return, regulation, order, or other official document, knowing it to be false, or makes any other false official statement knowing it to be false, shall be punished as a court-martial may direct." 10 U.S.C. § 907.

National Personnel Records Center in 1973 (AR 44- ABCMR Record of Proceedings, July 19,

2012). (*Id*. at 8-9). Plaintiff indicates that Hiles's military records could not have been

destroyed in a fire in 1973 because plaintiff received copies of those records in September 2008,

and the VA therefore lied about what it had received and what it needed to confirm and process

Hiles's claims. (*Id*. at 9, citing AR 35-39, plaintiff's letter to Conrad Meyer, Director, ABCMR,

August 6, 2012). Plaintiff further alleges there is documentary evidence showing that Hiles's

records were available in 1948 (*see* AR 280), but Hiles was later informed his records could not

be found. (Doc. 98 at 9).

Plaintiff also challenges the ABCMR's decision on the ground the ABCMR has acted

with the intent to delay resolution of the issues the United States Army has created with respect

to Hiles's military records. (*Id*. at 5). Plaintiff alleges he exhausted his remedies before the

ABCMR by receiving a final denial of his claim.[7] (*Id*. at 6, citing AR 9).

   *2. Standard of review*

   When a summary judgment motion involves review of a final agency action, the rules

that normally govern the summary judgment analysis do not apply because the Court's role in

reviewing the administrative record is more limited. *Kentuckians for Commonwealth v. U.S.*

*Army Corps of Engineers*, 963 F. Supp.2d 670, 677 (W.D. Ky. 2013), *aff'd sub nom.*

*Kentuckians for the Commonwealth v. U.S. Army Corps of Engineers*, 746 F.3d 698 (6th Cir.

2014) (citing *City of Cleveland v. Ohio,* 508 F.3d 827 (6th Cir. 2007); *N.C. Fisheries Ass'n, Inc.*

*v. Gutierrez,* 518 F. Supp.2d 62 (D.D.C. 2007); *J.N. Moser Trucking, Inc. v. U.S. Dep't of Labor,*

306 F. Supp.2d 774 (N.D. Ill. 2004) (stating that a district court's opinion on an appeal from a

---

[7] Plaintiff alleges that defendants violated 18 U.S.C. § 1001 by misrepresenting the contents of this letter in a prior
filing in this case to make it appear that plaintiff's claim was still in progress and that he had not exhausted his
administrative remedies. (*Id*. at 6, citing Doc. 53). Plaintiff has not shown he has a private right of action for
violations of § 1001, which is a criminal statute.

final agency action may be triggered by motions for summary judgment, but the judicial review

of an agency's final determination follows standards quite different from those applied in a

typical summary judgment proceeding)).  When "reviewing administrative agency decisions, the

function of the district court is to determine whether or not as a matter of law, evidence in the

administrative record permitted the agency to make the decision it did. . . ."  *Id.* at 678 (citing

*Sierra Club v. Dombeck,* 161 F. Supp.2d 1052, 1064 (D. Ariz. 2001) (citing *City & Cnty. of San*

*Francisco v. United States,* 130 F.3d 873, 877 (9th Cir. 1997)).  *See also Covenant Med. Ctr.,*

*Inc. v. Sebelius*, No. 07-15108, 2009 WL 2926442, at *2 (E.D. Mich. Sept. 10, 2009), *aff'd,* 424

F. App'x 434 (6th Cir. 2011) (in case brought under the APA, court's role on summary judgment

is to decide as a matter of law "whether the agency action is supported by the administrative

record and otherwise consistent with the APA standard of review").  The Court's review is

limited to the evidence contained in the administrative record.  *Covenant Med. Ctr., Inc.*, 2009

WL 2926442, at *2 (citing *Gutierrez,* 518 F. Supp.2d at 79).

### 3. *The APA*

The Secretary of the Army, acting through the ABCMR, is authorized to correct any

Army military record when he "considers it necessary to correct an error or remove an injustice."

*See* 10 U.S.C. § 1552(a)(1).[8]  "Military record" is defined broadly to include:

> [A] document or other record that pertains to (1) an individual member or former
> member of the armed forces, or (2) at the discretion of the Secretary of the
> military department concerned, any other military matter affecting a member or
> former member of the armed forces, an employee or former employee of that
> military department, or a dependent or current or former spouse of any such
> person.

*Id.*, § 1552(h).

---

[8]  The Secretary of the Army may also correct a person's military records "in accordance with a recommendation
made by a special board."  10 U.S.C. § 1558(a).

17

Title 32 C.F.R. § 581.3 "prescribes the policies and procedures for correction of military records by the Secretary of the Army, acting through the [ABCMR]." Members of the ABCMR are charged with the responsibility to "[r]eview all applications that are properly before them to determine the existence of error or injustice." *Id.*, § 581.3(b)(4)(i). An application for correction of a military record will be considered by a panel of at least three ABCMR members. 32 C.F.R. § 581.3(e)(3)(i). The ABCMR will recommend a correction if it determines that "the preponderance of the evidence shows that an error or injustice exists" in an applicant's records. *Id.*, § 581.3(e)(3)(iii)(A). A denial of an application is a final action of the ABCMR. *Id.*, § 581.3(g)(2)(i)(A). An applicant may request reconsideration of a denial within one year of the ABCMR's original decision. *Id.*, § 581.3(g)(4)(i).

Pursuant to the APA, the reviewing court shall "set aside" agency "action, findings, and conclusions" that are found to be "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). "A court reviewing an agency's adjudicative action should accept the agency's factual findings if those findings are supported by substantial evidence on the record as a whole." *Kentucky Waterways Alliance v. Johnson*, 540 F.3d 466, 473 (6th Cir. 2008) (quoting *Arkansas v. Oklahoma,* 503 U.S. 91, 113 (1992)).

The Secretary has "broad discretion in administering the correction of military records." *Haselwander v. McHugh*, 774 F.3d 990, 996 (D.C. Cir. 2014) (citing *Kreis v. Sec'y of the Air Force,* 866 F.2d 1508, 1514 (D.C. Cir. 1989)). However, the ABCMR's action must be supported by "reasoned decisionmaking." *Id*. (citing *Allentown Mack Sales & Serv., Inc. v. NLRB,* 522 U.S. 359, 374 (1998) (quoting *Motor Vehicle Mfrs. Ass'n of the U.S., Inc. v. State Farm Mut. Auto. Ins. Co.,* 463 U.S. 29, 52 (1983) (internal quotation marks omitted)). If the ABCMR's "explanation for its determination . . . lacks any coherence," the Court "owe[s] no

18

deference to [the ABCMR's] purported expertise" because the bases for its decision cannot be

discerned.  *Id*. (citing *Tripoli Rocketry Ass'n, Inc. v. Bureau of Alcohol, Tobacco, Firearms, &*

*Explosives,* 437 F.3d 75, 77 (D.C. Cir. 2006); *Coburn v. McHugh,* 679 F.3d 924, 926 (D.C. Cir.

2012) (finding that the Board's decisions were not entitled to any deference because they were

"largely incomprehensible")).  Further, "when the [ABCMR] fails to correct an injustice clearly

presented in the record before it," its action violates "its statutory mandate [under 10 U.S.C. §

1552]" and is arbitrary and capricious.  *Id*. (citing *Yee v. United States,* 512 F.2d 1383, 1387 (Ct.

Cl. 1975)).

### 4.  The ABCMR's decision was not arbitrary or capricious.

The ABCMR gave valid reasons for reaching its decision in this matter.  The ABCMR

found based on the evidence plaintiff presented that military medical officials had made various

entries in Hiles's medical records; each of Hiles's diagnoses was recorded in the records; and

plaintiff had not presented sufficient evidence to alter the diagnoses in the records, which were

presumed to have been made by competent military medical authorities.  (AR 46).  The ABCMR

found that plaintiff failed to provide "the necessary evidence or proof to corroborate what he

contends is incorrect on [Hiles's] medical records."  (*Id*.).

Plaintiff has not come forward with evidence in response to defendants' motion for

summary judgment to support a finding that the ABCMR's decision was arbitrary, capricious, an

abuse of discretion, not in accordance with law, or unsupported by substantial evidence.  5

U.S.C. § 706(2)(A).  Plaintiff alleges that he has provided "independent and corroborating

evidence to alter [Hiles's] diagnosis" and that the evidence he references was "clearly confirmed

by independent professionals."  (Doc. 98 at 9).  However, plaintiff has not identified any such

evidence in response to defendants' motion for summary judgment.  Nor has plaintiff identified

the "independent professionals" who allegedly confirmed evidence that was sufficient to alter the diagnosis contemporaneously recorded in Hiles's military records. Plaintiff only generally alludes to the existence of countervailing evidence and medical professionals who rendered differing diagnoses based on such evidence. Plaintiff's general allegations are insufficient to show that the ABCMR's decision was invalid on any of the grounds set forth in § 706(2)(A).

The additional matters cited by plaintiff, considered together, do not establish that the ABCMR's decision was arbitrary or capricious. Plaintiff alleges that the decision does not reflect the correct filing date of plaintiff's application; defendants have made false representations about the receipt and availability of Hiles's records; the ABCMR intentionally delayed resolution of the application; and several military officials and staff members of elected officials have acknowledged that a "major injustice" has occurred with respect to Hiles's military records. The ABCMR considered plaintiff's application on the merits, and plaintiff has not produced evidence in response to defendants' motion for summary judgment to show the ABCMR intentionally delayed the resolution of plaintiff's application. Moreover, insofar as plaintiff seeks to rely on the opinions of individuals other than the ABCMR panel members who were not charged with reviewing the evidence and making a decision on his application, those individuals' opinions do not bear on the reasonableness of the ABCMR's decision.

Further, plaintiff has not cited any specific evidence that shows defendants intentionally or otherwise misled Hiles, plaintiff or the Court about the availability or location of Hiles's military records. Plaintiff alleges that he "attached conclusive new evidence to [Doc. 94] that proved that the Defendants lied about the whereabouts and receipt of Veteran Hiles['s] military records." (Doc. 98 at 8-9). Plaintiff suggests that pertinent records surfaced after the VA indicated the records could not be found. (*Id*. at 9, citing Doc. 94, Attachments). The documents

20

do not support plaintiff's theory of intentional wrongdoing by the ABCMR. The documents

referenced by plaintiff show that Hiles submitted a claim for disability compensation benefits to

the VA in June 1948. (Doc. 94, Exh. 1). The VA Regional Office in Cincinnati submitted a

"Request for Army Information" in connection with the application for benefits relating to a right

ankle injury, a stomach condition, and an arm condition that were purportedly treated at hospitals

on "Palui Island," as well as dental work. (*Id.*, Exh. 4). Several medical treatment records which

were located and considered in connection with the claim are listed on the request for

information. (*Id.*). The request is also stamped, "Reports of the claimant alleged not found in

file. Should additional records be supplied, supplemental report will be furnished." (*Id.*). The

VA sent a letter to Hiles dated July 15, 1948, advising him that the official records relating to his

service received from the service department had been considered together with the other

evidence in his claims file in disallowing his claim for service-connected disability.[9] (*Id.*, Exh.

6). A fair reading of the documentation submitted by plaintiff is that the VA located medical

files of Hiles in connection with his 1948 application, but those reports did not support his

claimed service-connected injuries. This evidence does not support plaintiff's claim that

defendants acted in an arbitrary or capricious manner by misrepresenting the availability or

location of Hiles's records at any point in time.

     Finally, plaintiff relies on a number of cases where courts found the decisions of a

corrections board to be arbitrary and capricious to support his claim that the ABCMR's decision

declining to correct Hiles's record was arbitrary and capricious. (Doc. 98 at 10, citing

*Haselwander v. McHugh*, 774 F.3d 990 (D.C. Cir. 2014) (veteran denied Purple Heart); *Yee v.*

---

[9] The VA informed Hiles that "[s]ervice connection has not been established for the following diagnosed conditions: Stomach condition and residual sprain [right] ankle not found on last examination." (*Id.*).

21

*United States*, 512 F.2d 1383 (Ct. Cl. 1975) (promotion pass overs removed from record); *Weiss v. United States*, 408 F.2d 416 (Ct. Cl. 1969) (honorable discharge challenged); *Hertzog v. United States*, 167 Ct. Cl. 377 (1964) (veteran's records failed to reflect promotions); *Betts v. United States*, 172 F. Supp. 450 (Ct. Cl. 1959) (records showed veteran permanently incapacitated from service at time of separation from service); *Furlong v. United States*, 152 F. Supp. 238 (Ct. Cl. 1957) (veteran incapacitated for military service at time of discharge). A review of these cases demonstrates that courts will not hesitate to set aside findings of the ABCMR when the court determines those findings are not entitled to deference. However, these cases do not suggest a similar outcome here, where there is no indication that the ABCMR acted in an arbitrary or capricious manner by denying plaintiff's application.

In short, plaintiff has failed to produce evidence on summary judgment to show that the ABCMR's decision declining to correct Hiles's military records is not entitled to deference. Plaintiff has not shown that the decision is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). Accordingly, defendants are entitled to summary judgment on plaintiff's first claim for relief (1) challenging the decision of the ABCMR declining to correct Hiles's military records, and (2) seeking a Court order directing the ABCMR to correct Hiles's military records to reflect the full extent of the injuries Hiles suffered at the Battle of Peleliu in 1944.

**B. Defendants' renewed motion to dismiss Count II of the complaint**

Defendants move to dismiss Count II of the complaint on the ground the Court lacks subject matter jurisdiction over this claim for relief. Defendants allege that plaintiff's second claim for relief involves a determination of VA benefits owed Hiles, which is a matter over which this Court has no jurisdiction. (Doc. 97). Plaintiff objects to the motion to dismiss on the

grounds: (1) the Court limited the parties to briefing the issue of whether it has subject matter

jurisdiction over the second claim for relief and did not specify that defendants could file a

motion to dismiss the claim on that basis (Doc. 95); and (2) the Court has jurisdiction over the

claim for the reasons plaintiff has previously discussed, most particularly in his brief on the issue

of subject matter jurisdiction (Doc. 96).  (Doc. 98).

On March 25, 2013, the undersigned issued a Report and Recommendation

recommending that plaintiff's claims against all defendants be dismissed for lack of subject

matter jurisdiction.  The Report and Recommendation summarized plaintiff's second claim for

relief against the VA and supporting allegations as follows:

> At Hiles's request, plaintiff filed a claim and an appeal with the VA in January of
> 2006 on the ground Hiles had never been properly rated by the VA, nor
> adequately compensated for, all of his combat related injuries.  [Doc. 6 at PAGE
> ID #440].  The claim was submitted for expedited appeal to a unit known as the
> "Tiger Team," which rated Hiles as having a 100% service-connected disability,
> and the claim was then resubmitted to the VA for completion.  The VA rated
> Hiles as having only a 70% service-connected disability.  The VA engaged in
> stalling tactics, which included refusing to accept a Durable Power of Attorney
> submitted by plaintiff, and Hiles died before his appeal was finished and before
> payment was made to him based on the proper combat injury ratings.  (*Id.* at 441).
> The VA has informed plaintiff that he has no standing to continue the appeal.
> (*Id.*).  The VA also informed plaintiff that there was no appeal pending before it at
> the time of Hiles's death, when in fact Hiles had sent three letters to the VA
> asking the VA to account for his injuries at the proper rates, to pay him at the
> correct 100% disability rate, and to pay him back compensation for the period
> dating back to June 1948, when the VA initiated its delay tactics and wrongful
> claim denials.  (*Id.* at 442).  Plaintiff contends that had it not been for the VA's
> delays and diversion tactics, Hiles's claim and appeal would have been settled and
> payment would have been made to him before his death.  (*Id.*).  Plaintiff is
> pursuing a claim for back benefits he alleges are owed to Hiles for the period
> from 1948, when Hiles made his initial claim for benefits, until 2006 when the
> Tiger Team upheld Hiles's final claim and appeal, based on a 100% disability
> rating on the theory that had it not been for the "VA's consistent and repeated acts
> of misconduct," Hiles's claim and appeal would have been completed before his
> death.  (*Id.*).  Plaintiff also seeks to recover Hiles's "remaining burial costs" that
> should have been paid were it not for the VA's conduct.  (*Id.* at 525).  Plaintiff
> further seeks an order from the Court directing the VA to complete the appeal

upheld by the Tiger Team prior to Hiles's death and to address all outstanding issues. (*ld.* at 524).

(Doc. 38 at 3-4). The Report and Recommendation stated that plaintiff's second claim for relief was "essentially [a] collateral attack[] on the VA's exclusive authority to determine benefits issues" despite plaintiff's attempt to "frame all of his claims as 'tort claims stemming from misrepresentations and deceit[.]'" (*Id.* at 19, citing *Wojton v. U.S.*, 199 F. Supp.2d 722, 731 (S.D. Ohio 2002)). The Court found this is so because the claim "challenges the VA's reduction of Hiles's disability rating from 100% to 70% and seeks to recover benefits for the period dating from 1948 to the Tiger Team's decision on appeal in 2006, calculated on the basis of the VA's current rating tables." (*Id.* at 18-19, citing Doc. 6 at PAGE ID #442, 524). The Report and Recommendation concluded that the District Court did not have jurisdiction to hear this claim concerning benefits in light of the governing statutory scheme, which limits the District Courts' jurisdiction over such claims. (*Id.*, citing *Wojton*, 199 F. Supp.2d at 730; *Beamon v. Brown*, 125 F.3d 965, 974 (6th Cir. 1997)). This portion of the Report and Recommendation reads as follows:

> The Veterans' Judicial Review Act of 1988 (VJRA), Pub.L. No. 100-687, Tit. III, 102 Stat. 4105, 4113-4122 (codified in various provisions of Title 38 of the Unites States Code), established a multi-tiered framework for the adjudication of claims regarding veterans' benefits. Under the statutory scheme, a claimant initiates the process by filing for benefits with a regional office of the DVA, which conducts the initial review. *Beamon v. Brown*, 125 F.3d 965, 967 (6th Cir. 1997). An appeal from the regional officer's decision can be taken to the Board of Veterans Appeals (BVA). 38 U.S.C. § 7104(a). The Court of Appeals for Veterans Claims (CVA), an Article I court, has exclusive jurisdiction to review decisions of the BVA, 38 U.S.C. § 7252(a), and the United States Court of Appeals for the Federal Circuit has exclusive jurisdiction to review an appeal of a decision by the CVA. 38 U.S.C. § 7292. Such a decision is final, subject to review by the United States Supreme Court upon certiorari. *See* 38 U.S.C. § 7292(c). Because jurisdiction to review VA benefits decisions is limited by the statutory scheme, "it is clear that district courts do not have jurisdiction to hear claims concerning benefits." *Wojton*, 199 F. Supp.2d at 730 (citing *Beamon*, 125

24

F.3d at 974). The Secretary of the VA "shall decide all questions of law and fact necessary to a decision by the Secretary under a law that affects the provision of benefits to veterans," 38 U.S.C. § 511(a), subject to review only pursuant to the statutory scheme. *Veterans for Common Sense v. Shinseki*, 678 F.3d 1013, 1022 (9th Cir. 2012).

Consistent with the statutory framework, this Court lacks subject matter jurisdiction over the claims plaintiff brings here for veterans' benefits allegedly due Hiles. . . .

(Doc. 38 at 19).

On initial consideration of plaintiff's objections to the Report and Recommendation, the District Judge assigned to the case at the time, Judge Weber, adopted the undersigned's Report and Recommendation as to plaintiff's second through sixth claims for relief and dismissed those claims with prejudice. (Doc. 67). On October 16, 2014, plaintiff filed a motion for reconsideration of Judge Weber's Order. (Doc. 73). Judge Weber issued an Order on December 10, 2014, granting plaintiff's motion to reconsider the judgment of dismissal as to the second claim for relief and recommitted the matter to the Magistrate Judge for further proceedings. Judge Weber granted the motion to reconsider on the following ground:

In his [Reply in Further Support of Request for Reconsideration (Doc. 78)] filed November 17, 2014, plaintiff cites the Court to *Anestis v. U.S.*, 749 F.3d 520 [(6th Cir. 2014)]. . . .

Because *Anestis, id.* was argued in the reply brief, defendants have not had an opportunity to respond. In *Anestis, id.*, the district courts are advised that in certain circumstances, they do have subject matter jurisdiction over claims against the Veterans Administration and certain tort claims are not precluded by sovereign immunity. Whether this advice to the United State[s] District Courts applies to plaintiff's claims in this case should be decided only after both the United States and plaintiff have had full opportunity to present their positions to the record in this case. . . .

(Doc. 80 at 6-7).

Upon defendants' motion for a briefing schedule and in accordance with Judge Weber's Order, the undersigned ordered the parties to brief the issue of "whether the District Court has subject matter jurisdiction over plaintiff's second claim for relief." (Doc. 89 at 4). In response, plaintiff submitted a brief addressing the Court's jurisdiction (Doc. 96) and defendants filed their motion for summary judgment/renewed motion to dismiss Count II for lack of subject matter jurisdiction. (Doc. 97). Defendants argue in their renewed motion to dismiss Count II that the Sixth Circuit's decision in *Anestis* does not impact this Court's previous ruling that the District Court lacks subject matter jurisdiction over that claim. Defendants note that in *Anestis*, the Sixth Circuit agreed with the plaintiff that her wrongful death claim on behalf of her deceased husband, an Iraqi war veteran who committed suicide after the VA allegedly failed to provide mental health treatment to him, was "most properly characterized as a non-benefits tort claim that would not require the district court to review any VA benefits decisions." (*Id*. at 10, citing *Anestis*, 749 F.3d at 527). Defendants state that because it was undisputed in that case that the claim did "not call into question or involve any VA benefits determination," and plaintiff in fact conceded that the veteran was ineligible for VA benefits, there was no jurisdictional bar to plaintiff's tort claim. (*Id*., citing *Anestis*, 749 F.3d at 527). Defendants allege that in contrast, plaintiff's claim here is jurisdictionally barred under the statutory scheme because this case involves a question solely of benefits determination. (*Id*.).

Although plaintiff denies that his second claim for relief involves disability ratings or benefits determinations, plaintiff's own allegations and requests for relief belie his contention. In his response to defendants' renewed motion to dismiss, plaintiff refers the Court to his brief on the issue of this Court's subject matter jurisdiction. (Doc. 96). In the brief, plaintiff attempts to characterize his second claim for relief as a request for injunctive relief through which the VA

26

would be required to (1) pay accrued VA benefits that were wrongfully withheld from Hiles and placed in an escrow account, and (2) finish processing Hiles's last claim filed with the VA, which was filed in early February 2006 with plaintiff's assistance. (Doc. 96 at 10-12). Plaintiff alleges that he had obtained a Durable Power of Attorney for Hiles, with which the VA raised issues as a delay tactic. (*Id*. at 12). Plaintiff alleges that the VA eventually processed Hiles's claim and notified plaintiff by letter dated March 24, 2006, that the case had been assigned to a special unit known as the Tiger Team. (*Id*. at 12-13, 16). Plaintiff alleges that the VA ignored Hiles's request for records, which precluded the Tiger Team and the VA from accounting for all of Hiles's combat injuries. (*Id*. at 14). Plaintiff alleges that the Tiger Team and the Dayton, Ohio VA ruled in Hiles's favor on his claim for healthcare and increased his VA benefits. (*Id*.). Plaintiff alleges that the VA approved the claim for healthcare benefits but did not issue a ruling on any other claim for benefits. (*Id*. at 15). Plaintiff alleges that this claim was not completed and paid prior to Hiles's death due to the "VA's misuse of fiduciary appointment." (*Id*. at 11). Plaintiff further alleges that the VA intentionally lied about and withheld Hiles's records as it had done in June 1948. (*Id*. at 16). Plaintiff alleges that the VA was grossly negligent with respect to Hiles's records in violation of 5 U.S.C. 552(a).[10] (*Id*. at 17). Plaintiff frames the "[k]ey issues" as the "illegal procedures that the VA used, concealing and tampering with [Hiles's] Military and VA records that undermined his due process rights to obtain the proper VA healthcare and benefits and after decisions were made in his favor employed unconstitutional and illegal tactics to deprive Veteran Hiles from his property under the 5th Amendment of the Constitution as the Plaintiff stated in Complaint #2." (*Id*. at 9).

---

[10] Plaintiff also alleges that the VA's actions constitute criminal fraud in violation of 18 U.S.C. § 1001. (Doc. 96 at 16). As stated earlier, plaintiff has not shown he has a private right of action for alleged violations of § 1001.

It is clear from plaintiff's allegations that his second claim for relief challenges the manner in which the VA processed Hiles's claim for benefits, including the delays it created and its handling of Hiles's records, and that the relief plaintiff seeks is the payment of accrued benefits.  This Court previously ruled that the District Court lacks subject matter jurisdiction over the second claim for relief "for veterans' benefits allegedly due Hiles" pursuant to the Veterans' Judicial Review Act.  (Doc. 38 at 18-19).  As explained in the prior Report and Recommendation:

> [P]laintiff challenges the VA's reduction of Hiles's disability rating from 100% to 70% and seeks to recover benefits for the period dating from 1948 to the Tiger Team's decision on appeal in 2006, calculated on the basis of the VA's current rating tables. (Doc. 6 at PAGE ID #442, 524). . . .  Plaintiff alleges elsewhere in the complaint that he is seeking to recover benefits dating back to 1948 based on the correct disability rating. (Doc. 6 at PAGE ID #441, 594).  To the extent plaintiff seeks an order from this Court for the payment of backdated statutory benefits, the Court would be required to go back over a period that exceeds 60 years and "probe deeply into the mechanics of how such benefits are calculated by the VA, something it has no authority to do." *See Wojton*, 199 F. Supp.2d at 731. *See also Beamon*, 125 F.3d at 971.  Rather, it is the VJRA that provides the sole means for plaintiff to obtain such relief. *Wojton*, 199 F. Supp.2d at 731.  Thus, the motion to dismiss should be granted for lack of subject matter jurisdiction to the extent the complaint challenges the VA's decisions relating to the provision of veterans' benefits to Hiles.

(Doc. 38 at 19).

The Court has reconsidered the prior ruling in light of the decision in *Anestis* in accordance with Judge Weber's ruling.  (Doc. 80).  The Court finds that the decision in *Anestis* does not alter this Court's previous ruling.  To the contrary, the Sixth Circuit's analysis in *Anestis* reinforces the prior determination that the District Court lacks subject matter jurisdiction over plaintiff's second claim for relief.  *Anestis* clarifies that a claim challenging any decision made by the Secretary in the course of making a benefits

determination is not subject to review by the District Court. The Sixth Circuit in *Anestis*

expounded on the reach of the VJRA's preclusive effect in its decision:

> The VJRA provides that "[t]he Secretary shall decide all questions of law and fact necessary to a decision by the Secretary under a law that affects the provision of *benefits* by the Secretary to veterans" and that the Secretary's decision "shall be final and conclusive and may not be reviewed by any other official or by any court." 38 U.S.C. § 511 (emphasis added) (footnote omitted). The Code of Federal Regulations defines "benefit" as "any payment, service, commodity, function, or status, entitlement to which is determined under laws administered by the Department of Veterans Affairs pertaining to veterans and their dependents and survivors." 38 C.F.R. § 20.3. The VA medical benefits package includes authorized emergency care in VA facilities, 38 C.F.R. § 17.38, but veterans can receive authorized humanitarian emergency care not included in the benefits package. 38 C.F.R. § 17.37.
>
> The VJRA "creates a broad preclusion of judicial review of VA decisions." *Beamon v. Brown,* 125 F.3d 965, 970 (6th Cir. 1997); *see also Veterans for Common Sense v. Shinseki,* 678 F.3d 1013, 1023 (9th Cir. 2012) (noting that "Congress was quite serious about limiting our jurisdiction over anything dealing with the provision of veterans' benefits"). Section 511(a) has been interpreted to require the district court to first determine whether adjudication of the claim would require the district court to review the Secretary's decision regarding benefits. *Price v. United States,* 228 F.3d 420, 422 (D.C. Cir. 2001). If it would, then the district court lacks jurisdiction over the claim. If it would not, then the action may proceed in district court.

*Anestis*, 749 F.3d 524-25.

The Sixth Circuit provided further guidance as to the types of claims involving benefits

determinations over which the District Court lacks jurisdiction under the VJRA. The Court cited

*Shinseki,* which involved a challenge to delays in the VA's adjudication of veterans' mental

health care, for the proposition that "§ 511 precludes jurisdiction over a claim if it requires the

district court to review 'VA decisions that relate to benefits decisions,' including 'any decision

made by the Secretary in the course of making benefits determinations.'" *Id.* at 526 (citing

*Shinseki,* 678 F.3d at 1025) (quoting *Beamon,* 125 F.3d at 971)). The Sixth Circuit also cited its

decision in *Beamon*, which it noted "dealt with an issue that clearly would have prompted a

review of the Secretary's decision regarding benefits." *Id*. at 526. The claim in *Beamon*

challenged the *manner* in which the VA processed claims for VA benefits, and more specifically

the unreasonable delay in the application process for benefits. *Id*. The Sixth Circuit determined

that *Beamon* "would have involved a review of the benefits determinations of the VA, as the

claim challenged the process by which the VA made such determinations." *Id.* The Sixth

Circuit cited a number of additional cases from other circuits that "clearly involve[d] claims

challenging the VA's decision to deny, delay, reduce, or administer benefits, or to adjudicate

claims," including challenges to a reduction of benefits, delays in the provision and adjudication

of mental health and disability benefits, and the administration of benefits while receiving care,

as well as claims of fraud and misrepresentation with a benefits claim. *Id*. at 527 (citations

omitted).

In contrast to these cases, the Sixth Circuit found that the claim before it was "wholly

unrelated to any benefits determination"; rather, the claim "rest[ed] on the VA's duty to provide

emergency care, regardless of [the deceased's] status as an enrollee, or even a veteran." *Id*. The

Court therefore concluded that the claim did "not require a review of the Secretary's

determination of benefits" and was "not a claim involving benefits masked in tort language.

Rather, this claim is one where no review of the benefits determination is necessary." *Id*. at 528.

The Court held that because the plaintiff's claim did "not require review of a VA 'benefits

determination,'" the District Court was not barred under § 511 from exercising jurisdiction over

her claim. *Id*.

Plaintiff's second claim for relief is distinguishable from the claim at issue in *Anestis*.

Unlike the claim at issue in *Anestis*, plaintiff's second claim for relief clearly requires a review of

a VA benefits determination. (*See* Doc. 6 at PAGE ID #440-50, Doc. 6-1 at PAGE ID #451-

525).  Plaintiff challenges the manner in which the VA processed Hiles's claim for benefits.

(*Id*.).  Plaintiff claims that the VA engaged in improper tactics to avoid paying Hiles's claim for

benefits, unreasonably delayed the processing of the claim, and failed to complete the claim and

pay benefits to Hiles prior to his death.  (Doc. 6-1 at PAGE ID #524).  Plaintiff seeks an order

requiring the VA to complete the appeal of Hiles's claim for benefits and to pay his Estate "at the

proper rates including all back compensation accounting for all combat injuries."  (*Id*.).  Because

plaintiff's claim requires "review of a VA 'benefits determination,'" *Anestis*, 749 F.3d at 528,

and challenges the process by which the VA made its determination in Hiles's case, the District

Court is barred from exercising jurisdiction over plaintiff's second claim for relief.  For these

reasons, defendants' renewed motion to dismiss Count II for lack of subject matter jurisdiction

should be granted.

## IV.  Plaintiff's motion to vacate judgment in part (Doc. 101)

Plaintiff moves the Court to vacate in part the Court's Order dated September 16, 2014.

(Doc. 101).  The Order adopted the Magistrate Judge's Report and Recommendation as modified

and dismissed Counts Two through Six of the complaint for lack of subject matter jurisdiction.

(Doc. 67).  Plaintiff seeks to vacate the Court's Order insofar as the Court dismissed Counts

Three through Five of the complaint for lack of subject matter jurisdiction.

Because plaintiff moves the Court to revisit a prior order adjudicating fewer than all of

his claims, his motion to vacate is governed by Fed. R. Civ. P. 54(b).  Rule 54(b) states, in

relevant part:

> [A]ny order . . . that adjudicates fewer than all the claims or the rights and
> liabilities of fewer than all the parties does not end the action as to any of the
> claims or parties and may be revised at any time before entry of a judgment
> adjudicating all the claims and all the parties' rights and liabilities.

Fed. R. Civ. P. 54(b). *See Simmerman v. Ace Bayou Corp.*, 304 F.R.D. 516, 518 (E.D. Ky. 2015) (District courts have inherent authority under Rule 54(b) to "reconsider interlocutory orders and re-open any part of a case prior to the entry of final judgment.") (citing *Rodriguez v. Tenn. Laborers Health & Welfare Fund,* 89 F. App'x 949, 959 (6th Cir. 2004); *Mallory v. Eyrich,* 922 F.2d 1273, 1282 (6th Cir. 1991)). Reconsideration of an interlocutory order is appropriate as a general rule under the following circumstances: (1) there is an intervening change of controlling law; (2) new evidence is available; or (3) there is "a need to correct a clear error or prevent manifest injustice." *Id.* (quoting *Rodriguez,* 89 F. App'x at 959).

As grounds for his motion to vacate, plaintiff alleges that Judge Weber did not elaborate on his reasons for upholding the Report and Recommendation as to plaintiff's third through fifth claims for relief. (Doc. 101 at 1). Plaintiff alleges that the Order adopting the Report and Recommendation recommending dismissal of these claims for lack of subject matter jurisdiction is in error because the Magistrate Judge violated the Court's own procedural rules and plaintiff's due process rights by ruling on the motion to dismiss before plaintiff had an opportunity to file a reply memorandum in support of his motion to admit legal evidence and addendum in support of his claims. (*See* Docs. 31, 33, 37, 38). Plaintiff further alleges that the District Court erred by ruling that defendants had not waived their sovereign immunity from suit under the FTCA, and defendants committed a number of criminal acts and engaged in other misconduct which resulted in the denial of proper healthcare and financial benefits to Hiles. (Doc. 101 at 1-10). Plaintiff asserts he has submitted new evidence that shows that the VA acted in a grossly negligent manner and with malicious intent by concealing Hiles's military records from him and lying about its actions beginning in 1948, the year the VA first denied Hiles healthcare and benefits. (Doc. 103 at 2). Plaintiff specifically alleges that the evidence he has submitted shows the

United States Army mailed Hiles's military records to the Cincinnati VA in July 1948, and those records confirmed each of the facts and injuries Hiles claimed on his application form. (*Id*.). Plaintiff alleges that defendants' actions were tortious, arbitrary and capricious, and he should be permitted to amend the complaint based on the new facts and evidence presented to the Court. (Docs. 101, 103).

Plaintiff has not presented a valid basis for vacating the District Court's September 16, 2014 Order dismissing plaintiff's third, fourth, and fifth claims for relief for lack of subject matter jurisdiction. Plaintiff argues that the Court's ruling dismissing the claims was premature because the time to submit a reply memorandum in support of his motion to admit evidence related to the motion to dismiss had not yet run when the Report and Recommendation was issued. The Magistrate Judge addressed the motion to admit evidence in the Report and Recommendation. (Doc. 38 at 7-8). The motion was denied because defendants' motion to dismiss was fully briefed and plaintiff had not shown good cause for obtaining leave of court to file an additional memorandum in support of the motion to dismiss for reasons explained in the Report and Recommendation. (Doc. 38 at 7-8, citing S.D. Ohio Civ. R. 7.2(a)). Plaintiff has not shown any error in this regard.

Plaintiff challenges the merits of Judge Weber's rulings, but he has not alleged a valid ground for vacating the Order. Plaintiff alleges that he has presented new facts and evidence that were not available when Judge Weber issued his decision. (Doc. 103 at 2). However, plaintiff has not shown that such evidence would have led to a different outcome in his case. To the contrary, the arguments plaintiff has presented and the supporting evidence he has submitted subsequent to Judge Weber's Order confirm that plaintiff's third through fifth claims for relief involve challenges to a VA benefits decision. (*See* Doc. 101, Exhibits). Plaintiff has not shown

33

there has been an intervening change in the law such that the Court is vested with subject matter jurisdiction over these claims. Finally, plaintiff has not alleged facts or produced evidence to show that the prior Order must be vacated in part to "correct a clear error or prevent a manifest injustice." *Rodriguez,* 89 F. App'x at 959. Plaintiff's motion to vacate the Court's Order dismissing the third, fourth, and fifth claims for relief for lack of subject matter jurisdiction should be denied.

**V. Conclusion**

Plaintiff has not presented a valid reason for either the District Judge or the undersigned Magistrate Judge to recuse from this case. Plaintiff has not stated a legitimate ground, by affidavit or otherwise, for questioning the impartiality of the District Judge or the Magistrate Judge. Nor do the facts presented show that the decision of the ABCMR denying plaintiff's request to correct Hiles's records was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). To the contrary, the ABCMR gave valid reasons for the decision it reached. Finally, plaintiff has not established a legitimate basis for revisiting the Court's prior rulings. The Sixth Circuit's decision in *Anestis v. U.S.,* 749 F.3d 520 (6th Cir. 2014), does not impact the Court's ruling that it lacks subject matter jurisdiction over plaintiff's second claim for relief. Moreover, plaintiff has not presented any reason for the Court to vacate the prior Order dismissing his second through fifth claims for relief for lack of subject matter jurisdiction.

**IT IS THEREFORE ORDERED THAT:**

1. Plaintiff's motion for recusal (Doc. 99) is **DENIED** insofar as plaintiff moves for recusal of the Magistrate Judge.

34

**IT IS THEREFORE RECOMMENDED THAT:**

1.  Plaintiff's motion for recusal (Doc. 99) be **DENIED** insofar as plaintiff moves for recusal of the District Judge.

2.  Defendants' motion for summary judgment and renewed motion to dismiss Count II (Doc. 97) be **GRANTED**.

3.  Plaintiff's motion to vacate the District Court's Order in part (Doc. 101) be **DENIED**.

Date: _8/13/15_

Karen L. Litkovitz
United States Magistrate Judge

35

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

MARSHALL G. HILES,                           Case No. 1:12-cv-673
      Plaintiff,                             Black, J.
                                             Litkovitz, M.J.

vs.

ARMY REVIEW BOARD
AGENCY, et al.,
      Defendants.

## NOTICE

Pursuant to Fed. R. Civ. P. 72(b), **WITHIN 14 DAYS** after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations.   This period may be extended further by the Court on timely motion for an extension.  Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections.  If the Report and Recommendation is based in whole or in part upon matters occurring on the record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs.  A party may respond to another party's objections **WITHIN 14 DAYS** after being served with a copy thereof.  Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).